**SOUTH CENTRAL RURAL TELEPHONE COOPERATIVE CORPORATION, Inc., Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF KENTUCKY and General Telephone Company of Kentucky, Appellees.**

Court of Appeals of Kentucky.

April 24, 1970.

Ben B. Fowler and A. James Higgs, Jr., Dailey & Fowler, Frankfort, James E. Gillenwater, Glasgow, for appellant.

Louis Cox and John Hopkins, Hazelrigg & Cox, Frankfort, for appellees General Telephone Co. of Ky.

Morris E. Burton, Frankfort, for Public Service Commission.

CULLEN, Commissioner.

The Kentucky Public Service Commission granted a certificate of convenience and necessity to General Telephone Company "to construct, operate and maintain a modern automatic dial telephone system in the exchange area formerly served by the Farmers Telephone Company of Upton,

Kentucky, in Hardin County, Kentucky, and portions of adjoining counties." The certificate had been sought also by South Central Rural Telephone Cooperative Corporation. The applications of the two companies were heard jointly and the same order which granted the certificate to General denied the application of South Central. An appeal was taken by South Central to the Franklin Circuit Court, which entered judgment upholding the commission's order. South Central has appealed from that judgment to this court.

The appellant's contentions are: (1) The order granting the certificate to General rather than to South Central is unreasonable and unlawful, KRS 278.430; (2) the order improperly grants authority for operations in territory in Hart and Larue Counties for which territory South. Central previously had been granted a certificate and which authority General did not seek in its application.

The order is asserted to be unreasonable and unlawful on the claim that the record shows that the interests of the public would better be served by granting the certificate to South Central rather than to General. We shall briefly state the background.

Hardin and Larue Counties adjoin each other, Hardin on the west and Larue on the east, and their combined southern boundaries constitute the northern boundary of Hart County, which adjoins them to the south. Upton is a small community situated on the Hardin County-Larue County boundary line, a short distance north of the Hart County line. Most of Upton lies in Hardin County and it is generally considered to be a Hardin County community.

For many years prior to 1968 the Upton area was provided telephone service by the Farmers Telephone Company. The existence of this service predated the establishment of the Public Service Commission and therefore the company was not required to obtain, and did not have, a certificate of convenience and necessity defining its service territory. The territory it actually served consisted primarily of the Upton settlement, but the service extended out to the surrounding rural area and embraced some customers in northern Hart County and western Larue County. Substantially all of Hardin County, north of Farmers' territory, was being served in 1968 by General, and the areas in Larue and Hart Counties immediately to the east and south of Farmers' territory were being served by South Central. The latter had a certificate authorizing it to provide service up to the northern boundary of Hart County, but it had not undertaken to encroach on the small area in Hart County that was being served by Farmers.

Beginning in 1965, patrons of Farmers began complaining of the inadequacy of Farmers' service (which was by an antiquated manual system with old and worn-out equipment). A complaint was filed with the Public Service Commission in September 1965. Shortly thereafter representatives of South Central began discussions with representatives of Farmers, which embraced a proposal by South Central to purchase the stock of the Farmers corporation, following which South Central would make substantial improvements of the Farmers system. Some degree of agreement was reached and South Central proceeded to purchase approximately two-thirds of the shares of Farmers, but controversy and litigation arose concerning ownership of some of the shares and delay was encountered in the effort of South Central to purchase the remaining shares. In the meantime the Public Service Commission entered an order, in January 1968, directing Farmers to file a plan for improvement of its service. In April 1968 Farmers advised the commission that it was unable to provide adequate service.

On May 7, 1968 General filed its application for a certificate of convenience and necessity "to operate and maintain local exchange and toll facilities to serve the Upton Exchange Area in Hardin County,

Kentucky, as shown" on an attached exhibit, which consisted of a map of proposed service areas in southern Hardin County and a small portion of western Larue County. Thereafter, on May 28, 1968, South Central filed its application, which was for authority to serve "the Upton exchange area of Hardin County, Kentucky, as shown" on an attached exhibit which was a map substantially similar to that of General's. As hereinbefore stated; the two applications were heard together, and the certificate was awarded to General rather than to South Central.

In its argument on this appeal that the Commission's order is unreasonable and arbitrary, South Central makes no strong point of the fact that it had gone a considerable way toward acquiring ownership of Farmers, with the view of upgrading the latter's service. Perhaps the reason for this is that South Central had not obtained any approval by the Public Service Commission for its proposed acquisition of Farmers, which approval appears to be a requisite to the sale of a utility system. See Public Service Commission v. Cities of Southgate, etc., Ky., 268 S.W.2d 19. South Central does assert a claim of equities in its favor by virtue of the investment it had made in Farmers (around $10,000), but it does not suggest in what way such venturesome investment has any relation to the question of public convenience and necessity.

South Central argues that the public interest would better have been served by a grant of the certificate to it because its rates would be lower than General's, it would provide a greater number of options as to multi-party-line service, it would provide a wider toll-free service area, and it had made a more extensive commitment, before application, in the form of surveys, maps and commitments for the obtaining of equipment. However, the real substance of the argument is simply that South Central would provide cheaper and better service in the fringe rural areas outside of the populated center of Upton.

The record shows that General's rates in Upton itself, and its service options there, would be equal to or perhaps a little better than South Central's. The record shows also that "beautiful downtown Upton" contains 81.8 percent of the total stations in the area covered by the applications, and that 309 of the 320 Upton subscribers had requested the service of General. There is some indication in the record that South Central, being primarily in the *rural* service business, had tailored its proposed rate schedule to favor the rural subscribers.

■ Balancing the considerations in favor of each of the applicants, it appears that South Central would provide cheaper rates and more service options in the rural fringe areas, would provide more toll-free service to those subscribers desiring to call communities already served by South Central in Hart County, and had made more pre-application commitments. On the other hand, it appears that General would provide slightly cheaper rates and equal service options in the portion of the exchange area that embraced the great proportion of subscribers, General's service was desired by the great majority of subscribers, General already was serving most of Hardin County, General was in a much more solid financial position than South Central, and General's cost of providing the new facilities would be some $100,000 less than South Central's.

■ On this balancing we cannot say that the commission acted unreasonably or unlawfully in granting the certificate to General. The commission is not restricted to making a close comparison of whose rates will be the lowest and whose service will be most convenient. Kentucky Utilities Company v. Public Service Commission, Ky., 390 S.W.2d 168; Public Service Commission v. Cities of Southgate, etc., Ky., 268 S.W.2d 19. The controlling consideration is the public convenience and necessity and to the extent that its determination involves conflicts of rural and urban interests, and of public and private ownership,

the Public Service Commission has been given some latitude of decision. See Public Service Commission v. Cities of Southgate, etc., Ky., 268 S.W.2d 19.

 South Central's second argument is that the Public Service Commission unlawfully granted authority to General to serve territory in Hart and Larue Counties theretofore certificated to and served by South Central, for which territory General had made no application. The main basis for this argument is that General's application was to serve the Upton Exchange Area *in Hardin County*, the map accompanying the application did not purport to cover any part of Hart County and it covered only a small portion of Larue County, and the same was true of maps of service areas and installations introduced in evidence. South Central says it had no inkling that General desired to serve any portion of Hart County.

We find no real merit in the argument. In the first place, it is clear from the record that all of the territory being served by Farmers was sought to be covered by the desired new certificate, that Upton was the headquarters of the territory, and that Hardin County was simply the principal location or mailing address of the service facilities. In the second place, South Central's own application, on its face, was no more extensive than General's. In the third place, in a brief filed by South Central before the commission, South Central said: "In these consolidated cases, General Telephone and South Central each applied for certificates to serve the territory now occupied by Farmers Telephone Company." In the fourth place, the areas in Hart and Larue Counties being served by Farmers obviously were considered by all parties as part of the Upton service area, because they did not involve a sufficient number of patrons to warrant identification as a separate service area.

It is true that South Central had in 1955 been issued a certificate to extend its service to the northern boundary of Hart County. But it had not encroached on Farmers' service area. We do not construe the commission's order as authorizing General to extend Farmers' area so as to enter any territory which South Central previously has been serving.

South Central complains that the commission *took away* from South Central, and gave to General, territory for which South Central previously had been given a certificate. This has not in fact happened. South Central still has a certificate authorizing it to provide service up to the northern boundary of Hart County. That certificate has not been taken away, nor has any encroachment been authorized upon territory that actually has been served by South Central. General simply has been authorized to serve the same territory that Farmers had served for years.

The judgment is affirmed.

HILL, C. J., and MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.