**PUBLIC SERVICE COMMISSION et al.**

**v.**

**CITIES OF SOUTHGATE, HIGHLAND HEIGHTS et al.**

Court of Appeals of Kentucky.

April 30, 1954.

Rehearing Denied June 11, 1954.

J. D. Buckman, Jr., Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., Stephens L. Blakely, Blakely, Moore & Blakely, Covington, Floyd C. Williams, Cincinnati, Ohio, Cornelius W. Grafton, Wyatt, Grafton & Grafton, Louisville, for appellants.

James M. Honaker, Frankfort, for appellees.

CULLEN, Commissioner.

In an action in the Franklin Circuit Court, the cities of Southgate, Highland Heights, Cold Springs, Crestview, Bellevue, Dayton and Fort Thomas sought to set aside an order of the Public Service Commission which approved a sale of water utility properties by Union Light, Heat and

Power Company to Commonwealth Water Company. The court entered judgment setting aside the order and remanding the case to the commission for further proceedings. From that judgment the commission, Union and Commonwealth have appealed.

Prior to April 3, 1953, Union had been operating electric, gas and water systems in a substantial area in northern Kentucky, principally in Campbell County. The water system served the cities of Fort Thomas, Bellevue, Dayton and Silver Grove, and a number of unincorporated areas. The water business represented only about five percent of Union's total business, its main operations being in the fields of gas and electricity.

On April 3, 1953, Union entered into a contract to sell its water system to Commonwealth, which was a company newly organized by a group of persons who were experienced in the water business and who owned and were operating another water company in a different part of the state. The price was approximately $600,000. The contract was conditioned upon approval by the Public Service Commission, and on April 17, 1953, Union and Commonwealth filed a joint application with the commission for approval of the sale. The cities named in the first paragraph of this opinion thereupon intervened, asking that the proposed sale be disapproved and that the matter be continued for the purpose of enabling the cities to make arrangements to purchase the water system from Union.

During the course of the hearings before the commission, the cities submitted an offer in general terms, that they would buy the water system at the price agreed to be paid by Commonwealth. The proposal was that the purchase would be made either by the cities acting jointly and sharing the cost on a proportionate basis, or by a water district which the cities would cause to be organized under KRS Chapter 74. However, the offer was not complete, in that the cities had not agreed on a specific proration of the cost and other details, nor was a water district organized before the case was decided by the Public Service Commission.

Evidence was brought out on the hearings that, because Union could use joint meter reading and joint billing for its three kinds of utility services, Union's operating costs for the water system would be some $10,000 per year less than those of Commonwealth.

The Public Service Commission found: (1) It had jurisdiction to pass on the proposed sale; (2) the desire of the cities to purchase the property was not sufficient grounds for disapproving the sale; (3) the cities, because of tax considerations, could operate the system more economically than either Union or Commonwealth, but this fact did not constitute grounds for disapproving the sale; (4) it was not necessary to determine "with detailed finality" whether Union or Commonwealth could provide the most economical service; (5) Commonwealth was "ready, willing and able" to provide water service in the area; and (6) the proposed sale was in the public interest. The commission thereupon ordered that the sale be approved, but closed its order with the following statement:

"Nothing contained herein shall be considered as a finding of the Commission with respect to the value of the properties transferred."

Upon their appeal to the circuit court, the cities contended that the public interest would best be served through municipal ownership of the water system, and that in any event the sale to Commonwealth should not have been approved because of the evidence that Commonwealth could not operate the system as cheaply as Union.

The circuit judge, in a written opinion, expressed his views that in the public interest the cities should be given an "equal and adequate opportunity to acquire the water property, on equal terms * * * with Commonwealth," and that it was necessary, in the public interest, that the commission find which of the companies could provide the most economical service. However, the basis assigned by the judge for setting aside the commission's order was that, because of the statement in the order that the commission was not finding the value of the property, the order was unrea-

sonable, arbitrary and invalid. The case was remanded to the commission with directions to find the value of the property, the amount of any offers to buy other than Commonwealth's, and whether Union or Commonwealth could furnish the lower water rate. The commission also was directed to reexamine the evidence "in the light of public interest, and measured in part by the economy of the service considered."

On the appeal to this Court, the first contention of Union and Commonwealth is that the Public Service Commission has no jurisdiction over sales of utility systems. The contention is that this is a question of jurisdiction of subject matter, and therefore, under the general rule that jurisdiction of subject matter cannot be conferred by appearance, waiver or agreement, the fact that the two companies applied to the commission for approval of the sale is of no significance. The Public Service Commission, although joining with the other two appellants in their other contentions, does not join in this one, but maintains it does have jurisdiction.

■ It is true that the governing statute, KRS Chapter 278, does not in express terms confer jurisdiction upon the Public Service Commission to pass upon sales of utility systems. However, we are of the opinion that the jurisdiction is implied necessarily from the statutory powers of the commission to regulate the service of utilities. KRS 278.040.

■ Counsel concede that a public utility subject to the jurisdiction of the Public Service Commission cannot discontinue operation without approval of the commission. See 43 Am.Jur., Public Utilities and Services, § 78, p. 621. Obviously, if a sale were made to a purchaser incapable of carrying on the service, the sale would be the practical equivalent of a discontinuance of service. The Public Service Commission is charged with responsibility, and vested with power, to see that the service of public utilities is adequate, and where an existing utility proposes to sell its system the com-

mission, in order to carry out its responsibility, must have the opportunity to determine whether the purchaser is ready, willing and able to continue providing adequate service.

■ It is our opinion that the power of the Public Service Commission to determine whether a proposed purchaser of a utility system is ready, willing and able to provide adequate service is necessarily implied from the statutes. However, the appellee cities would have us extend the implication so as include the power in the commission to determine whether public ownership is more beneficial than private ownership, and to determine under whose ownership the lowest rates may be achieved. The latter two questions address themselves to basic public policy, upon which we feel an express legislative declaration is required. From a mere grant of power to regulate rates and service, we are unwilling to imply a declaration of policy that not only must rates be reasonable, but the type of ownership that will provide the lowest rates is the only type of ownership that will be permitted to operate a utility service.

■ We do not ascribe the same meaning as did the circuit judge to the final statement in the order of the Public Service Commission, that nothing in the order should be considered as a finding with respect to the value of the property. Apparently, he construed this statement as meaning that the commission had given no consideration to the value of the property in relation to the purchase price. We think the statement was intended merely as a warning to the parties that the sale price would not be taken as conclusive for rate base purposes.

From the commission's order as a whole, it is apparent that the commission did give general consideration to the value of the property in relation to the price offered, at least to the extent of determining that the transaction was not unreasonable or impracticable. In passing upon the ability of Commonwealth to provide adequate service, the commission necessarily considered the

financial structure of Commonwealth, and the probabilities of Commonwealth being able to operate successfully from a financial standpoint.

As a matter of fact, no one contended before the commission that the price was excessive. The cities were willing to pay the same price.

■ We think it was sufficient for the commission to make a broad determination that the price was within the general range of a fair price. To require the commission to fix a specific valuation on the property, in a proceeding for sale, would unduly hamper and restrict the commission in later regulation of rates.

The judgment is reversed, with directions to set it aside and to enter a judgment sustaining the order of the Public Service Commission.