**KENTUCKY INDUSTRIAL UTILITY CUSTOMERS, INC. and Lexington–Fayette Urban–County Government, Appellants,**

v.

**KENTUCKY UTILITIES COMPANY; Commonwealth of Kentucky, ex rel. A.B. Chandler, III; Attorney General; Jefferson County, Kentucky, ex rel. Michael E. Conliffe, Jefferson County Attorney; Metro Human Needs Alliance; People Organized and Working for Energy Reform and Kentucky Public Service Commission, Appellees.**

**Commonwealth of Kentucky, ex rel. A.B. Chandler, III, Attorney General, Appellant,**

v.

**Kentucky Public Service Commission; Kentucky Utilities Company; Kentucky Industrial Utility Customers, Inc.; Jefferson County, Kentucky ex rel. Michael E. Conliffe, County Attorney; Lexington–Fayette Urban County Government; Metro Human Needs Alliance Association; and People Organized and Working for Energy Resources, Appellees.**

Nos. 97–SC–1091–DG, 97–SC–1095–DG.

Supreme Court of Kentucky.

Dec. 17, 1998.

Michael L. Kurtz, Boehm, Kurtz & Lowry, Cincinnati, OH, for KUIC, Appellant.

Edward W. Gardner, Lexington–Fayette Urban County Government, Lexington, Elizabeth E. Blackford, Assistant Attorney General, Frankfort, for Appellants.

Richard F. Newell, Kendrick R. Riggs, Ogden, Newell & Welch, Louisville, for KUC, Appellee.

John R. McCall, Douglas M. Brooks, Louisville Gas & Electric Co., Louisville, for KUC, Appellee.

Elizabeth E. Blackford, Assistant Attorney General, Frankfort, J. Bruce Miller, Louisville, for Jefferson County, Appellee.

Carol M. Raskin, Legal Aid Society, Inc., Louisville, and, Anthony G. Martin, Lexington, for People Organized and Metro Human Needs, Appellee.

Richard G. Raff, Deborah T. Eversole, Kentucky Public Service Commission, Frankfort, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed in part and reversed in part a judgment of the Franklin Circuit Court which had found that KRS 278.183 is constitutional, but that it had been applied retroactively in violation of KRS 446.080(3) by the Public Service Commission. That part of the PSC order which allowed

Kentucky Utilities to recover an environmental surcharge which included environmental costs incurred before January 1, 1993 was vacated and remanded to the PSC for further determination. This case is one of first impression involving the interpretation of KRS 278.183, the Environmental Surcharge Statute.

The major issues presented are whether KRS 278.183 violates Section 2 of the Kentucky Constitution and whether the statute, if constitutional, permits a surcharge for those projects built before the statute was enacted.

Kentucky Utilities Company filed an application for an environmental surcharge with the Public Service Commission pursuant to KRS 278.183 on January 20, 1994. The application requested authority to increase rates for approximately 430,000 ratepayers located in 77 Kentucky counties. The requested rate increase was $23 million per year after the second full year of the operation of the surcharge. The surcharge rate increase included both residential, industrial and commercial customers.

KRS 278.183 was adopted by the Kentucky General Assembly in 1992 and is commonly known as the Environmental Surcharge Statute. The act was a codification of S.B. 341, 1992 Ky.Acts. ch. 102 § 1, which provided in pertinent part as follows:

WHEREAS, it is hereby declared the policy of the General Assembly to foster and encourage the continued use of Kentucky coal by electric utilities serving the Commonwealth; and

WHEREAS, electric utilities should have incentive to use Kentucky coal in deciding how to best achieve and maintain compliance with the Federal Clean Air Act as amended and those environmental requirements which apply to coal combustion wastes and by-products from facilities utilized for production of energy from coal;

NOW, THEREFORE,

*Be it enacted by the General Assembly of the Commonwealth of Kentucky:*

SECTION 1. A NEW SECTION OF KRS CHAPTER 278 IS CREATED TO READ AS FOLLOWS:

(1) Notwithstanding any other provision of this chapter, effective January 1, 1993, a utility shall be entitled to the current recovery of its costs of complying with the Federal Clean Air Act as amended and those federal, state, or local environmental requirements which apply to coal combustion wastes and by-products from facilities utilized for production of energy from coal in accordance with the utility's compliance plan as designated in subsection (2) of this section. These costs shall include a reasonable return on construction and other capital expenditures and reasonable operating expenses for any plant, equipment, property, facility, or other action to be used to comply with applicable environmental requirements set forth in this section. Operating expenses include all costs of operating and maintaining environmental facilities, income taxes, property taxes, other applicable taxes, and depreciation expenses as these expenses relate to compliance with the environmental requirements set forth in this section.

The recovery of the costs involved is to be made by a surcharge subject to review and approval by the PSC. KRS 278.183(2).

The legislative intent of the statute was to promote the use of high sulfur Kentucky coal by permitting utilities to surcharge their customers for the cost of a scrubber which is part of a power plant that cleans high sulfur coal in order to meet the acid rain provisions of the Federal Clean Air Act amendments of 1990. This Court recognizes that both high sulfur and low sulfur coal are mined in Kentucky. The high sulfur coal is mined primarily in Western Kentucky whereas low sulfur coal is mined primarily in Eastern Kentucky. The legislature believed that some Kentucky coal was in a disfavored position because high sulfur coal was the product that required pollution control devices. In order to balance the preference for coal produced in the western part of the United States, regulations were enacted which allowed utilities to immediately recover fuel cost increases due to the use of coal produced in the western part of the United States. Prior to 1992, a utility could increase its rates only pursuant to the Fuel Adjustment Clause or as a

general rate case. A general rate case pursuant to KRS 278.190 is a lengthy procedure in which a new base rate is approved only after thorough examination of all operations and costs by the PSC. In 1992, the General Assembly enacted the statute involved in this case which allows utilities to use Kentucky coal and collect the costs of cleaning high sulfur coal. The effect is that the statute provides an alternate procedure to increasing the base rate by allowing utilities to recover the costs of environmental compliance by means of a surcharge rather than by opening a general rate case.

## I. Due Process

Ratepayers have a right to expect reasonable utility rates. Regulators and utilities alike should respect that right. The proper standard to be applied in judicial review is the rational basis test, and the statute is constitutional if it is rationally related to a legitimate interest. In this statute, the General Assembly acknowledged a statewide need to continue the use of Kentucky coal so as to provide jobs and other economic benefits in Kentucky. There is a legitimate government interest in securing a sound economy. *Cf. Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446 (1994); *Hayes v. State Property and Buildings Commission,* Ky., 731 S.W.2d 797 (1987). KRS 278.183 is rationally related to an important governmental purpose of securing a sound economy and does not violate the substantial due process rights of the ratepayer. It is well established that in order to succeed in either a procedural or substantive due process claim, such claimant must demonstrate a legitimate entitlement to a vested property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Utility ratepayers have no vested property interest in the rates they must pay for a utility service despite the fact that it is provided by a regulated monopoly. *Smith v. Southern Bell Telephone & Telegraph,* 268 Ky. 421, 104 S.W.2d 961 (1937); *Wright v. Central Kentucky Natural Gas Co.,* 297 U.S. 537, 56 S.Ct. 578, 80 L.Ed. 850 (1936).

Kentucky Industrial Utility Customers, Inc. argues that the statute either on its face or as applied by the PSC does not allow a balancing of interests of investors and ratepayers, and therefore violates constitutional due process. It is well settled that rate making is a legislative function and the power vested in the legislature to make rates may be exercised by it either directly or through some appropriate agency. *Commonwealth, ex rel. Stephens v. South Central Bell Telephone Co.,* Ky., 545 S.W.2d 927 (1976). *Duquesne Light Co. v. Barasch,* 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989), leaves the decision on what rate setting procedures best meet individual needs to the individual states. *See also National–Southwire Aluminum Co. v. Big Rivers Electric Corp.,* Ky.App., 785 S.W.2d 503 (1990), which states in part that there is no litmus test for establishing fair, just and reasonable rates, and there is no single prescribed method for accomplishing that goal. Consequently, the legislature can engage in rate making directly, or delegate that authority to the Commission. The Constitution does not prevent the General Assembly itself from performing an initial balancing of interests and then delegating the specific rate making authority to the Commission. The preamble to the Environmental Surcharge Statute, as well as the statute, indicates that the legislature balanced a variety of competing interests.

In this case, the protestants have already received the "judicial model of an evidentiary hearing" that the United States Supreme Court determined was not required in all instances, even if a constitutionally protected property right exists. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). An examination of the record indicates that public notice was given, that the protestants intervened in the action and conducted a vigorous examination of every aspect of the surcharge application. They were permitted discovery, full participation in the hearing, the use of expert witnesses and to cross-examine the Utility's witnesses, as well as to file comprehensive and cogent briefs. They received their due process rights.

We find no constitutional or statutory authority to support the claim for separate

proceedings to evaluate separate costs. The record does not indicate how the failure of the Commission to consider the Utility's overall financial condition, such as it would in a complete rate case pursuant to KRS 278.190, renders the surcharge rates to be inherently unreasonable. If the protestants believe the overall rates are not fair, just and reasonable, they may seek remedy pursuant to KRS 278.260. However, to add the requirement that the Utility demonstrate that it is not earning in excess of a previously approved rate base would mandate a full review of the Utility's earnings, or a general rate case pursuant to KRS 278.190. The judicial imposition of such a requirement would frustrate the legislative action in authorizing a utility surcharge provision. In addition, if the Commission, on its own motion and after a hearing, finds that the overall rates are not just and reasonable, it can authorize just and reasonable rates to be followed pursuant to KRS 278.270. By comparison, separate rate proceedings for fuel adjustment expenses have been upheld in many jurisdictions. *See Norfolk v. Virginia Electric and Power*, 197 Va. 505, 90 S.E.2d 140, 11 PUR3d 438 (1955); *City of Chicago v. Illinois Commerce Com'n*, 13 Ill.2d 607, 150 N.E.2d 776, 24 PUR3d 334 (Ill.1958), as examples.

■ The protestants contend that the PSC did not adequately balance industrial and commercial interests versus public interest in reaching its result. Unfortunate as that may be, *Federal Power Com'n v. Hope Natural Gas*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944), states that the Commission has discretion in working out the balance of interest necessarily involved and that it is not the method, but the result, which must be reasonable. The protestants have not demonstrated that the Commission has abused its discretion in this respect. It is generally conceded that for purposes of computing the average $53 per customer cost, that large industrial customers were being treated the same as individuals or small families, therefore making the estimated average higher than the actual increase that most residential customers would experience.

## II. Equal Protection and Special Legislation

■ The protestants claim that KRS 278.183 violates the constitutional prohibitions against special legislation found in Section 59. *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954), provides that a statute must equally apply to all in a class and there must be distinctive and natural reasons for any classification. *See also Delta Air Lines v. Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985). The Environmental Surcharge Statute satisfies these standards. It is uniform upon the class to which it applies. The class in question is that of electric utilities and not utility costs. The statute does not single out any utility for special treatment. Legislation which applies to and operates uniformly upon all members of any class of persons requiring legislation unique to themselves in the matter covered by the legislation is general and not special or local. *Manning v. Sims*, 308 Ky. 587, 213 S.W.2d 577 (1948).

■ The environmental surcharge is not facially unconstitutional or as it is applied by the Commission in this case. We will discuss the effect of retroactivity later in this opinion. It is the responsibility of the General Assembly to determine proper public purposes and to adopt legislation to reach such goals.

Initially, the role of this Court is to determine whether the legislature had a reasonable basis for the legislation sufficient to justify creating a separate classification for certain persons. *See Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1986). *See also Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1933).

There are distinctive and natural reasons supporting the classification. The legislature sought to give an incentive to use Kentucky coal which in turn would help stabilize the large coal economy for Kentucky. Such a classification is based on distinctive and natural reasons.

There is no constitutional violation based on equal protection under the Kentucky Constitution Sections 2 or 59 or the Federal Constitution.

## III. Standard of Review

The protestants challenge the constitutionality of the statute on various grounds. They claim that the statute on its face and as applied by the Commission violates due process guarantees of the federal and state constitutions. The Attorney General argues that substantive due process has been violated because the property of a ratepayer, that is, the money to pay the surcharge, will be taken without due process of law. The KIUC contends that procedural due process guarantees have been violated.

When considering the constitutionality of any statute, this Court must draw all reasonable inferences and implications from the act as a whole, and thereby, if possible, sustain its validity. *Graham v. Mills*, Ky., 694 S.W.2d 698 (1985). We are persuaded by the authority used by the circuit judge of *Hall v. Union Light, Heat & Power Co.*, 53 F.Supp. 817 (E.D.Ky.1944), when citing *Fletcher v. Peck*, 6 Cranch 87, 3 L.Ed. 162 (1810), that the violation of the Constitution must be clear, complete and unmistakable in order to find the law unconstitutional.

In regard to the orders of the Commission, the obligation of the court is to determine whether the protestants have shown by "clear and satisfactory evidence" from the record that the Commission orders are unlawful or unreasonable. KRS 278.430. The orders can be found unreasonable only if it is determined that the evidence presented leaves no room for difference of opinion among reasonable minds. *Energy Regulatory Com'n v. Kentucky Power*, Ky.App., 605 S.W.2d 46 (1980). In making such a review, the court is confined to a consideration of the evidence as presented in the record. KRS 278.440.

It has long been settled that a claimant must show a legitimate entitlement to a vested property interest in order to succeed in either a procedural or substantive due process claim. *Roth, supra.* The consumers have no vested property interest in the rates they pay, even for a regulated monopoly utility service. *Southern Bell Telephone & Telegraph Co., supra.*

## IV. Retroactivity of KRS 278.183

The final significant issue is whether the statute was retroactively applied. The protestants argue that the fundamental legislative intent of the statute is to equalize the financial consequences of a utility's decision as between scrubbing and fuel switching to meet the requirements of the Clean Air Act.

The issue relates to the request by the Utility for prospective recovery of the costs of 15 projects. Eight of the 15 projects relate to federal, state or local environmental requirements other than the Clean Air Act of 1990. The Commission order allowed the Utility to recover costs incurred after June 1, 1994, for compliance with the Clean Air Act of 1990 and other environmental requirements applicable to coal facilities used to generate electricity. The PSC used the current net book value of the pre–1993 projects rather than the original investment in determining the amount of the costs. The circuit judge refused to impose a surcharge for environmental costs incurred by the Utility years before the event of the Clean Air Act. The Court of Appeals held that KRS 278.183 allows recovery of costs that are to be used to comply with the applicable environmental requirements that are not already included in existing rates. KRS 278.183(1) and (2). This would include costs of projects already completed but not included in existing rates as well as projects completed in the future. Only the current costs of such projects were recoverable as distinguished from past costs. The Commission and the Utility contend that the order of the Commission was not unlawfully retroactive because the environmental capital costs from 1983 to 1992 recovered through the surcharge are currently being carried on the accounting records of the Utility at net depreciated costs. The Commission and the Utility respond that because the 1983–1992 environmental capital costs have been depreciated in value prior to their inclusion in the surcharge of 1994, the statute has not been applied retroactively.

KRS 446.080(3) states "no statute shall be construed to be retroactive unless expressly so declared." This is a principle fundamental to statutory construction in Kentucky. The

courts have consistently upheld this admonition and have declared that there is a strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result. This is particularly true when the legislation is substantive and not remedial, and new rights and new duties are created. We cite only a few of the numerous cases which confirm that principle as follows: *Gould v. O'Bannon*, Ky., 770 S.W.2d 220 (1989); *Hudson v. Commonwealth*, Ky., 597 S.W.2d 610 (1980); *Roberts v. Hickman County Fiscal Court*, Ky., 481 S.W.2d 279 (1972); *Webster County Soil Conservation Dist. v. Shelton*, Ky., 437 S.W.2d 934 (1969); *Davis v. Commonwealth Life Ins. Co.*, Ky., 284 S.W.2d 809 (1955); *City of Covington v. Sohio Petroleum Co.*, Ky., 279 S.W.2d 746 (1955); *ITT Commercial Finance Corp. v. Madisonville Recapping*, Ky.App., 793 S.W.2d 849 (1990).

There is simply no evidence of a clear legislative intent that the surcharge is to be applied retroactively. The statute expressly declares that the law is to become effective January 1, 1993. There is nothing inherent in the nature of the statute which requires, by necessity, any retroactive application. The surcharge permits a utility to submit its compliance plan for meeting environmental requirements to the Commission for approval. The plain and unambiguous language of the statute indicates that no surcharge is to be allowed until after Commission approval of a compliance plan. Clearly, this is necessarily a prospective exercise. There is no reason to believe that the legislature intended that the PSC approve, after the fact, actions by the Utility which have occurred more than ten years previous. It is of no consequence that the 1983–1992 environmental capital costs included in the surcharge in 1994 have been reduced by depreciation. KRS 446.080(3) prohibits applying statutes retroactively to any costs which occurred prior to January 1, 1993, the stated effective date of the surcharge statute.

The fundamental rule in statutory interpretation is to give effect to the legislative intent. *Wesley v. Bd. of Education of Nicholas County*, Ky., 403 S.W.2d 28 (1966).

A statute should not be interpreted so as to bring about an absurd or unreasonable result. The policy and purpose of the statute must be considered in determining the meaning of the words used. *Cf. Wade v. Comm., Dept. of Treasury*, Ky.App., 840 S.W.2d 215 (1992).

The primary intent as expressed by the legislative preamble is to promote the use of high sulfur Kentucky coal by permitting a surcharge for scrubbing equipment. Many of the costs authorized for recovery in the surcharge were used by the Utility years before there was any thought of the Clean Air Act of 1990. During the 1983–1992 period, the earnings of the Utility were presumed to be at an appropriate level, even after the environmental capital expenditures were made. If they were not, the Utility could have sought a rate increase through a general rate case. The retroactive application of the statute here gives the Utility a financial windfall by allowing recovery of costs which have long ago been booked, taxes and accounted for in the annual reports to the shareholders and countless state and federal regulatory filings. Such a result runs directly counter to the clear legislative intent.

The legislation involved is substantive and not remedial. The surcharge creates a new right for all electric utilities, that is, the right to recover expenses as well as a return on and a return of capital costs associated with environmental projects without filing a general rate case. The law also requires consumers to pay for the costs of the environmental compliance plan through the surcharge. These new rights and responsibilities did not exist before the enactment of the surcharge. Therefore, the statute is a substantive change to the Public Utility Code and was not intended to remedy any past wrong or codify an existing procedure. It was only intended to apply to the Utility's future obligation to comply with new environmental laws.

The costs recovery section of the statute, which is Section (2), must be read together with the compliance plan in Section (1). The Court of Appeals concluded that the statute was not applied retroactively by authorizing

surcharge recovery for the going-forward capital costs of the project built before the effective date of the law. This type of analysis does not consider that the compliance plan approval is a prerequisite to the surcharge recovery and that the compliance plan cannot be made up of assets developed as much as ten years before the effective date of the law. Moreover, the analysis used by the Court of Appeals improperly applied traditional rate-making accounting principles to the new surcharge. The Court of Appeals made reference to the fact that current statutes require utilities to maintain their system of accounts in accordance with the guidelines established by the Federal Energy Regulatory Commission, and that such accounting and rate making allow capital assets to be depreciated and recovered in rates over their useful lives. Consequently, the surcharge for the net-book costs of the historical assets in question were not retroactive.

We agree with the cogent argument presented by the KIUC that this is selective application of traditional rate-making principles so as to benefit the Utility. In a typical general rate case, all the assets and liabilities included on the books of the utility for as long as the utility has been in existence are considered. Here, the traditional rules about rate making have been completely changed. Instead of examining all the elements of a rate base necessary to provide electric service, the surcharge looks specifically at only one element of the cost of service, that is, the environmental compliance plan charges at a date certain, which is January 1, 1993, the effective date of the statute. In addition, the statute begins by stating that "notwithstanding any other provision of this chapter ..." This is a clear indication that the General Assembly intended to consider the surcharge separately without regard to any other rate-making statutes. The PSC is not required to set any rate based on the accounting entries of the utility it supervises. *Fern Lake Co. v. Public Service Com'n,* Ky., 357 S.W.2d 701 (1962). The accountants for the Utility do not establish the rates for the consuming public. Only the regulatory commission has that responsibility.

It should be understood that the judgment originally rendered by the circuit court did not mean that the Utility will be denied rate recovery for its environmental projects built before January 1, 1993, the effective date of KRS 278.183. It only means that such recovery can be achieved through a general adjustment to rates, not the specialized surcharge procedure.

It is the holding of this Court that KRS 278.183 is constitutional but that it has been applied retroactively in violation of KRS 446.080(3) by the Public Service Commission order which allows Kentucky Utility Company to recover environmental expenditures incurred before January 1, 1993.

The decision of the Court of Appeals is affirmed in part and reversed in part. All costs associated with the environmental capital projects built before January 1, 1993, the effective date of KRS 278.183, cannot be included in the surcharge. Therefore, this portion of the case is remanded to the Public Service Commission for a specific calculation of the appropriate rate adjustment.

All concur.