KENTUCKY PUBLIC SERVICE COMMISSION, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel. Jack CONWAY; and Duke Energy Kentucky, Inc. (f/k/a The Union Light, Heat, and Power Company), Appellees.

and

Duke Energy Kentucky, Inc. (f/k/a The Union Light, Heat, and Power Company), Appellant,

v.

Commonwealth of Kentucky, ex rel. Jack Conway; and Kentucky Public Service Commission, Appellees.

Nos. 2009–SC–000134–DG, 2009–SC–000150–DG.

Supreme Court of Kentucky.

Oct. 21, 2010.

Anita Brooks Mitchell, David Shawn Samford, Gerald Edward Wuetcher, Helen C. Helton, Kentucky Public Service Commission, Frankfort, KY, Counsel for Appellant/Appellee, Kentucky Public Service Commission.

Jason Patrick Renzelmann, M. Holliday Hopkins, Sheryl G. Snyder, Frost, Brown, Todd, LLC, Louisville, KY, Counsel for Appellant/Appellee, Duke Energy Kentucky, Inc. (f/k/a The Union Light, Heat, and Power Company).

Dennis Gordon Howard, II, Assistant Attorney General, Lawrence Wilson Cook, Office of Rate Intervention, Office of the Attorney General, Frankfort, KY, Counsel for Appellee Commonwealth of Kentucky, ex rel. Jack Conway.

John Newton Hughes, Frankfort, KY, Mark R. Hutchinson, Wilson, Hutchinson & Poteat, Owensboro, KY, Counsel for Amicus Curiae, Atmos Energy Corporation.

James M. Miller, Sullivan, Mountjoy, Stainback & Miller, PSC, Owensboro, KY, Counsel for Amicus Curiae, Big Rivers Electric Corporation.

Richard S. Taylor, Frankfort, KY, Stephen B. Seiple, Columbus, OH, Counsel for Amicus Curiae, Columbia Gas of Kentucky, Inc.

Robert M. Watt, III, Stoll, Keenon, Ogden PLLC, Lexington, KY, Counsel for Amicus Curiae, Delta Natural Gas Company, Inc.

David Arthur Smart, General Counsel, East Kentucky Power Cooperative, Winchester, KY, Roger R. Cowden, Lexington, KY, Counsel for Amicus Curiae, East Kentucky Power Cooperative.

Clayton Otis Oswald, Taylor, Keller, Dunaway & Tooms, PLLC, London, KY, Counsel for Amicus Curiae, Jackson Energy Cooperative Corporation.

Frank N. King, Jr., Dorsey, King, Gray, Norment & Hopgood, Henderson, KY, Counsel for Amicus Curiae, Kenergy Corp.

Daniel T. Yates, Governmental Affairs and Member Counsel, Kentucky Association of Electric Cooperatives, Inc., Louisville, KY, Counsel for Amicus Curiae, Kentucky Association of Electric Cooperatives, Inc.

Mark Richard Overstreet, Stites & Harbison, PLLC, Frankfort, KY, Counsel for Amicus Curiae, Kentucky Power Company.

Damon R. Talley, Hodgenville, KY, Counsel for Amicus Curiae, Kentucky Rural Water Association, Inc.

Allyson Kay Sturgeon, E. on U.S., LLC, Deborah Tully Eversole, Kendrick Riggs, William Duncan Crosby, III, Stoll, Keenon, Ogden, PLLC, Louisville, KY, Counsel for Amicus Curiae, Kentucky Utilities Company and Louisville Gas and Electric Company.

Robert M. Spragens, Jr., Spragens & Higdon, PSC, Lebanon, KY, Counsel for Amicus Curiae, Taylor County Rural Electric Cooperative Corporation.

Opinion of the Court by Chief Justice MINTON.

We granted discretionary review of these cases to decide whether the Kentucky Public Service Commission (PSC) had the plenary authority to allow a utility to adjust its rates by imposing a surcharge or rider aimed at recovering costs associated with the utility's program to accelerate improvement of its gas distribution mains. We hold that so long as the rates established by the utility were fair, just, and reasonable, the PSC has broad ratemaking power to allow recovery of such costs outside the parameters of a general rate case and even in the absence of a statute specifically authorizing recovery of such costs.

## I. PROCEEDINGS IN THE COURT OF APPEALS AND TRIAL COURT.

The Court of Appeals held that the PSC lacked this plenary authority absent a stat-

ute specifically allowing the recovery of such costs outside a general rate case. To that extent, the Court of Appeals affirmed trial court orders invalidating the rider as it existed before the enactment of Kentucky Revised Statutes (KRS) 278.509[1] in 2005. But the Court of Appeals reversed trial court orders invalidating the rider after the enactment of KRS 278.509 because the Court of Appeals disagreed with the trial court's ruling that KRS 278.509 was unconstitutional. By our holding today, we disagree with the Court of Appeals' view that the legitimacy of the rider depended upon the enactment of a specific statute authorizing recovery of that particular cost outside a general rate case. Accordingly, we reverse, in part, affirm, in part, and remand to the trial court with directions to reinstate the PSC orders allowing for the rider or surcharge.[2]

## II. FACTS.

As stated by the Court of Appeals, the instant controversy:

involves five consolidated appeals by the Attorney General from the Public Service Commission's (PSC) orders over a five-year period approving and implementing a portion of Duke Energy Kentucky, Inc.'s (f/k/a the Union Light, Heat and Power Company (Duke)) rate sched-

ule known as the Accelerated Main Replacement Program (AMRP) Rider.

Neither party takes issue with the Court of Appeals' recitation of the relevant facts, which stated as follows:

In 2001, Duke developed a program to improve its gas distribution mains. The company owned approximately 1000 miles of mains, including over 150 miles of cast iron and bare steel mains dating back to 1887 and 1907. Because cast iron and bare steel mains leak more frequently than those constructed from coated steel or polyethylene, Duke at first intended to replace the aging mains over a fifty-year period. However, because of the age of the mains to be replaced, Duke implemented the AMRP to replace all mains within ten years.

In May 2001, confronted with increases in its capital expenditures, Duke filed an application with the Commission [PSC] pursuant to KRS 278.180 for an adjustment of its general rates and, in the same filing, sought approval to employ the AMRP Rider to streamline recovery of the costs associated with the main replacement program. The Attorney General intervened in the 2001 rate case and opposed the AMRP Rider contending that the PSC had no authority to permit a surcharge to recover costs

---

1. KRS 278.509 provides:

Notwithstanding any other provision of law to the contrary, upon application by a regulated utility, the commission may allow recovery of costs for investment in natural gas pipeline replacement programs which are not recovered in the existing rates of a regulated utility. No recovery shall be allowed unless the costs shall have been deemed by the commission to be fair, just, and reasonable.

2. The terms *rider* and *surcharge* are not well-defined under Kentucky law. From our examination of the briefs, it appears to us that the parties may use the term *rider* to refer to a formula rather than a particular dollar amount used in the ratemaking process to

recover costs of the AMRP program and that the parties may use the term *surcharge* to refer to the particular dollar amount actually imposed on consumers to recover such costs. *See also* KRS 278.010(12) (defining *rate* as "any individual or joint fare, toll, charge, rental, or other compensation for service rendered or to be rendered by any utility, and any rule, regulation, practice, act, requirement, or privilege in any way relating to such fare, toll, charge, rental, or other compensation, and any schedule or tariff or part of a schedule or tariff thereof" without further defining such terms as *fare, toll, charge, schedule,* or *tariff.*)

incurred after a general rate case without conducting a new general rate case. It asserted that single-issue ratemaking is not permitted under the statutory scheme unless the General Assembly specifically permits the procedure.

The PSC concluded that its authority was derived from its general powers conferred by KRS 278.030 and 278.040 to establish "fair, just and reasonable" rates and KRS 278.290, to revaluate new construction, extensions, and additions to utility property. On January 31, 2002, the PSC authorized Duke to implement the AMRP Rider for a three-year period subject to annual review of new AMRP costs during that period. Under the surcharge formula, Duke was permitted to automatically recover its return on investment of the preceding year's increase in plant investment incurred under the replacement program for three years following the completion of the 2001 general rate case. After the expiration of three years, if Duke intended to continue the program, it was required to file a new general rate application. The Attorney General appealed.

In the years that followed, the PSC approved each of Duke's annual applications for adjustments to the AMRP Rider and the Attorney General appealed each ruling to the Franklin Circuit Court. The final PSC order appealed was entered on December 22, 2005. As directed by the PSC's 2001 order, on February 25, 2005, Duke filed its next general rate case and sought approval of the continuation of the AMRP Rider. Again, the Attorney General intervened.

While the Attorney General's appeals from the prior orders and Duke's 2005 rate case were pending, the Kentucky General Assembly passed KRS 278.509. As it did before, the PSC relied on its plenary rate-making powers but also relied on what it perceived as its specific authority conferred by the newly enacted KRS 278.509 and approved the rider. The Attorney General appealed.

The Franklin Circuit Court consolidated the Attorney General's appeals and, after the parties filed cross-motions for summary judgment, vacated and remanded the orders of the PSC pertaining to the AMRP rider. It held that KRS 278.509 was unconstitutional in violation of the title and single-subject provisions of Section 51 of the Kentucky Constitution, and that the PSC's authority under KRS 278.030 and 278.040 did not permit the PSC to perform an interim review on a single cost absent specific statutory authority. The court concluded that the PSC's authority to consider any expense was limited to a general rate filing. Duke appealed.[3]

## III. ANALYSIS.

█ This appeal presents questions of statutory interpretation, so we review de novo the lower courts' determinations about the scope of the PSC's authority.[4]

As noted by the Court of Appeals, a party challenging a PSC action in court bears the burden of proving that the PSC's

---

**3.** The Court of Appeals' recitation of facts also indicates that the trial court granted the PSC and utilities a stay "of any effect the circuit court's order may have on surcharge proceedings other than the AMRP Rider, pending the outcome of this appeal" after the Attorney General issued an opinion stating that "because there was no explicit, direct, or statutory power to authorize such clauses, the PSC had no authority to approve the [fuel adjustment] surcharge."

**4.** *See Artrip v. Noe,* 311 S.W.3d 229, 231 (Ky. 2010) ("Statutory interpretation is a question of law and this Court reviews it *de novo.*").

action is unreasonable or unlawful under KRS 278.430. And, as further noted by the Court of Appeals, the PSC is a "creature of statute"; and, thus, the lawfulness of its action depends on whether the PSC's action exceeded its statutory authority. Differing with the Court of Appeals, we conclude that the PSC's ratemaking actions were within its statutory ratemaking authority, which we read somewhat more broadly than does the Court of Appeals.

The broad role of the PSC in regulating and investigating utilities to ensure that utilities comply with state law is set forth in KRS 278.040, which provides, in pertinent part:

(1) The Public Service Commission *shall regulate utilities and enforce the provisions of this chapter.* . . .

(2) The jurisdiction of the commission shall extend to all utilities in this state. The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions.

(3) The commission may adopt, in keeping with KRS Chapter 13A, reasonable regulations to implement the provisions of KRS Chapter 278 and *investigate the methods and practices of utilities to require them to conform to the laws of this state,* and to all reasonable rules, regulations and orders of the commission not contrary to law.[5]

Because utilities are allowed to charge consumers only "fair, just, and reasonable rates" under KRS 278.030(1), the PSC must ensure that utility rates are fair, just, and reasonable to discharge its duty under KRS 278.040 to ensure that utilities comply with state law.

As a key part of its duty to ensure that utility rates charged comply with state law, the PSC must approve or deny any requested changes in a utility's rate. KRS 278.180 governs how rate changes must be made. The statute requires that utilities generally give the PSC thirty days' notice of any proposed rate change and that the PSC order rate changes only after giving the utility the same amount of notice.[6] In other words, KRS 278.180 does not require any particular process to allow a utility to change its rates other than complying with notice requirements.

KRS 278.190 covers the subject of "[p]rocedure when new schedule of rates filed." Apparently the Court of Appeals construed this statute as requiring a certain process (a general rate case) in most cases in which some sort of new rate is requested or filed. Some of the factors that may be considered by the PSC in

---

**5.** Emphasis added.

**6.** KRS 278.180 (Changes in rates, how made) provides that:

(1) Except as provided in subsection (2) of this section, no change shall be made by any utility in any rate except upon thirty (30) days' notice to the commission, stating plainly the changes proposed to be made and the time when the changed rates will go into effect. However, the commission may, in its discretion, based upon a showing of good cause in any case, shorten the notice period from thirty (30) days to a period of not less than twenty (20) days. The commission may order a rate change only after giving an identical notice to the utility. The commission may order the utility to give notice of its proposed rate increase to that utility's customers in the manner set forth in its regulations.

(2) The commission, upon application of any utility, may prescribe a less time within which a reduction of rates may be made. We note that the PSC states in its brief that KRS 278.180 "is not implicated here." We believe that the PSC means that there has been no allegation that notice requirements under KRS 278.180 were violated in this case.

ratemaking within general rate cases or otherwise, specifically those regarding valuation of utility property, are established in KRS 278.290.[7] But the plain language of KRS 278.190 does not actually require that the PSC proceed with a general rate case or other particular process every time some new rate or change in rates is requested. To the contrary, the statute simply provides that upon filing of a schedule

of new rates, the PSC "may" conduct a "hearing concerning the reasonableness of the new rates" on its own motion or if a complaint is filed by any person challenging the rates as unreasonable or otherwise contrary to law under KRS 278.260.[8] If a complaint is filed by a person challenging rates as unreasonable or contrary to law, other provisions of KRS Chapter 278, KRS 278.260[9], KRS 278.270[10] and KRS

7. The Court of Appeals noted the utilities' argument that the trial court failed to consider KRS 289.290(1), and the Court of Appeals stated that this "statute delineates the factors to be considered when fixing utility rates and has been interpreted to afford the PSC broad discretion." Citing National–Southwire Aluminum Co. v. Big Rivers Elec. Corp., 785 S.W.2d 503 (Ky.App.1990).
KRS 278.290 (Valuation of utility property in connection with rates, service or issuance of securities—Unit Rate Base) states:
(1) Subject to the provisions of subsection (2) of this section, the commission may ascertain and fix the value of the whole or any part of the property of any utility in so far as the value is material to the exercise of the jurisdiction of the commission, and may make revaluations from time to time and ascertain the value of all new construction, extensions and additions to the property of the utility. In fixing the value of any property under this subsection, the commission shall give due consideration to the history and development of the utility and its property, original cost, cost of reproduction as a going concern, capital structure, and other elements of value recognized by the law of the land for rate-making purposes.
(2) The commission shall not value or revalue the property of any utility unless the valuation or revaluation is necessary or advisable in order to determine the legality or reasonableness of any rate or service or of the issuance of securities, and then only after an investigation affecting the rate, service or securities has been instituted by the commission upon complaint or application or upon its own motion, and a hearing has been held on reasonable notice.
(3) In any rate investigation where the utility serves two (2) or more municipalities, the commission may, in computing the rate of return on the property used and useful, take as the base for the computation the valua-

tion of the system as a whole, but may make a differential in the case of an individual municipality in proportion to the increased cost of service, if the utility can show that such a differential should be allowed.

8. KRS 278.190 covers "Procedure when new schedule of rates filed—Suspension of new rate schedule—Burden of Proof—Refunds." KRS 278.190(1) states: "Whenever any utility files with the commission any schedule stating new rates, the commission may, upon its own motion, or upon complaint as provided in KRS 278.260, and upon reasonable notice, hold a hearing concerning the reasonableness of the new rates." (Emphasis added.) Subsections (2), (3) and (4) respectively establish that the PSC may suspend the new rate schedule under certain circumstances, that the utility bears the burden of proof to show that increased rates are just and reasonable, and that the PSC may order a utility to make refunds under certain circumstances.

9. KRS 278.260 (Jurisdiction over complaints as to rates or service—Investigations—Hearing) states:
(1) The commission shall have original jurisdiction over complaints as to rates or service of any utility, and upon a complaint in writing made against any utility by any person that any rate in which the complainant is directly interested is unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act affecting or relating to the service of the utility or any service in connection therewith is unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the commission shall proceed, with or without notice, to make such investigation as it deems nec-

278.280,[11] authorize the PSC to conduct investigations and hearings and enter appropriate orders concerning rates or services. Hearings are not necessarily required to resolve the complaint.[12] And these statutes do not mandate that a complaint compels a general rate case under KRS 278.190.

The Court of Appeals stated in its opinion that "KRS 278.030 and KRS 278.040 expressly grant the PSC plenary ratemaking authority." Yet, it answered the question of whether KRS 278.030 and KRS 278.040 gave the PSC the authority to approve the AMRP Rider outside the context of a general rate case in the negative.[13] Apparently the Court of Appeals read KRS 278.190 as requiring the filing of a general rate case for any changes in rate because its opinion stated that: "KRS 278.190 establishes the procedure to be followed when a rate change is sought, referred to as a general rate case." On the other hand, latter portions of its opin-

essary or convenient. The commission may also make such an investigation on its own motion. No order affecting the rates or service complained of shall be entered by the commission without a formal public hearing.

(2) The commission shall fix the time and place for each hearing held by it, and shall serve notice thereof upon the utility and the complainant not less than twenty (20) days before the time set for the hearing. The commission may dismiss any complaint without a hearing if, in its opinion, a hearing is not necessary in the public interest or for the protection of substantial rights.

(3) The complainant and the person complained of shall be entitled to be heard in person or by an attorney and to introduce evidence.

10. KRS 278.270 (Orders by commission as to rates) states:

Whenever the commission, upon its own motion or upon complaint as provided in KRS 278.260, and after a hearing had upon reasonable notice, finds that any rate is unjust, unreasonable, insufficient, unjustly discriminatory or otherwise in violation of any of the provisions of this chapter, the commission shall by order prescribe a just and reasonable rate to be followed in the future.

11. KRS 278.280 (Orders by commission as to service—Extension of service) states:

(1) Whenever the commission, upon its own motion or upon complaint as provided in KRS 278.260, and after a hearing had upon reasonable notice, finds that the rules, regulations, practices, equipment, appliances, facilities or service of any utility subject to its jurisdiction, or the method of manufacture, distribution, transmission, storage or supply employed by such utility, are unjust, unreasonable, unsafe, improper, inadequate or insufficient, the commission shall determine the just, reasonable, safe, proper, adequate or sufficient rules, regulations, practices, equipment, appliances, facilities, service or methods to be observed, furnished, constructed, enforced or employed, and shall fix the same by its order, rule or regulation.

(2) The commission shall prescribe rules for the performance of any service or the furnishing of any commodity of the character furnished or supplied by the utility, and, on proper demand and tender of rates, the utility shall furnish the commodity or render the service within the time and upon the conditions provided in the rules.

(3) Any person or group of persons may come before the commission and by petition ask that any utility subject to its jurisdiction be compelled to make any reasonable extension. The commission shall hear and determine the reasonableness of the extension, and sustain or deny the petition in whole or in part.

12. KRS 278.260(2).

13. The Court of Appeals included within the legal analysis portion of its opinion a subheading entitled, "WHETHER KRS 278.030 AND KRS 278.040 CONFERRED AUTHORITY UPON THE PSC TO APPROVE THE AMRP RIDER." After reviewing other caselaw concerning other issues of ratemaking outside general rate cases, the Court of Appeals concluded "that the PSC cannot authorize the imposition of a surcharge for the main replacement program proposed by Duke without specific statutory authorization."

ion suggest that this requirement might not apply where the issue was not "amenable" to general rate proceedings. But, as noted previously, the plain language of KRS 278.190 does not necessarily require the filing of a general rate case any time a utility seeks a change in its rates.

Noting the "complex and lengthy procedure" of a general rate case customarily employed when a utility seeks to change its rates under KRS 278.190, the Court of Appeals reviewed case law concerning whether more expedited proceedings involving isolated issues in ratemaking might be allowable without specific statutory authority [14] and determined that cases approving such expedited proceedings for isolated issues involved issues that were "not amenable to review *via* a general rate increase" and were distinguishable from the instant case because "[t]he present controversy does not involve capital expenditures that are unanticipated, fluctuating, or beyond Duke's control, or threaten its solvency." So the Court of Appeals decid-

ed that the AMRP surcharge was "amenable to the test-year review concept to be followed in a general rate case, and is a replacement cost to be considered in a general rate increase case."

The Attorney General similarly argues that the PSC, as a creature of statute, only has those powers that are expressly granted to it by statute or are necessarily implied for it to be able to exercise its enumerated powers and responsibilities.[15]

■ While the power to approve the AMRP rider at issue may not have been expressly granted by statute before the enactment of KRS 278.509, we, nonetheless, conclude that the PSC has the power to allow such a rider based upon (1) its plenary ratemaking authority derived from KRS 278.030 and KRS 278.040, which essentially require that the PSC act to ensure that rates are "fair, just and reasonable" and (2) the absence of any statutes specifically requiring a particular proce-

**14.** Specifically, the Court of Appeals cited *National–Southwire Aluminum Co.*, 785 S.W.2d at 503, in which the Court of Appeals affirmed a trial court order affirming a PSC order allowing a utility to offer variable rates solely to aluminum smelter customers based on fluctuating aluminum prices. No specific statute allowed the PSC to approve utility rates employing this particular type of variable rate; and, in fact, one statute prohibited utilities from unreasonably treating different types of customers differently. But the Court of Appeals in *National–Southwire* found the differential treatment of the aluminum smelters reasonable due to various factors. *See id.* at 514–15.

The Court of Appeals also cited *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.*, 983 S.W.2d 493 (Ky.1998), as indicating that "[o]ur highest Court has specifically recognized with approval the prevailing view that separate rate proceedings for fuel adjustment expenses are valid." But because fuel adjustment clauses were not at issue in that case, our statements to the effect

that fuel adjustment clauses are generally accepted was dicta. Fuel adjustment clauses are not specifically, explicitly permitted by any statute, although there is a regulation, 807 Kentucky Administrative Regulations (KAR) 5:056, which purports to permit them. It appears that Kentucky appellate courts have never directly addressed the validity of fuel adjustment clauses.

**15.** In *Public Service Commission v. Cities of Southgate and Highland Heights*, 268 S.W.2d 19 (Ky.1954), this Court concluded that the PSC's power included not only powers expressly provided by statute but could also encompass powers necessarily implied to take action to meet its statutory duties. Specifically, in that case this Court concluded that the PSC had the implied power to approve or disapprove a utility systems sale, despite the lack of express statutory authority to do so, because of the PSC's general statutory authority under KRS 278.040 to regulate utility service. *See id.* at 21. We note that *Highland Heights* did not involve questions of the PSC's ratemaking authority, unlike the present case.

dure when determining if rates are fair, just, and reasonable.[16]

Despite the Court of Appeals' findings that the AMRP was amenable to general rate case proceedings,[17] we find nothing in the statutes that mandates that this rider or the calculation of the actual monetary surcharge could only be approved through a general rate case. Although, undoubtedly, such a rider or surcharge could be approved through a general rate case— and here the AMRP rider was initially approved in this manner—KRS 278.190(1) states simply that the PSC "may" hold a hearing "concerning the reasonableness of the new rates" when a utility files a schedule setting new rates. So the statute does not command such a hearing upon the filing of new rates.

Nor does it require that all possible factors be considered in the hearing. KRS 278.192 states that the Commission may allow a utility to use either a historical 12-month test period or a forward-looking 12 month test period to determine the reasonability of a general rate increase. Similarly, 807 KAR 5:001 § 10 requires that applications for general adjustment of rates must be supported by either a historical 12–month test period or a forward-looking 12–month test period. But nothing requires that a utility can only recover costs for the previous year, as the Attorney General contends, rather such test periods appear aimed at predicting future costs when determining if proposed rates are fair, just, and reasonable.[18]

█ Occasionally, the legislature has seen fit to enact a statute concerning a specific ratemaking issue.[19] But the PSC and utilities argue that these statutes actually limit the PSC's ratemaking powers rather than expand them. They also point to fuel adjustment clauses, which have long been used and have been recognized as valid by courts in other jurisdictions,[20] de-

---

16. While we recognize that the PSC has discretion in fulfilling its statutory duty of insuring that rates are fair, just, and reasonable, we do not hold that the PSC has unlimited power to do whatever it wants in regards to ratemaking. For example, in *South Central Bell Telephone Co. v. Util. Reg. Comm'n*, 637 S.W.2d 649 (Ky.1982), we recognized that the PSC (or its predecessor) could not use its plenary ratemaking authority for purposes other than insuring that rates were fair, just, and reasonable; specifically we held that the Commission could not order a rate that was too low to be "fair, just, and reasonable" to penalize a utility for poor service because statutes required separate procedures for dealing with ratemaking issues and dealing with service issues. *Id.* at 651–54. Although *South Central Bell* does indicate that the PSC's ratemaking power "will be strictly construed[,]" *see id.* at 653, we do not read it as inconsistent with our opinion here, given that the ratemaking challenged in *South Central Bell* stemmed from an improper purpose inconsistent with the statutory duty to ensure that rates are "fair, just, and reasonable" to utilities as well as customers.

17. In fact, Duke Energy and the PSC point out that the AMRP rider (a formula) was approved through a general rate case, and that only the particular monetary cost/surcharge (not the rate or formula itself) would change from year to year subject to PSC approval (at least for first three years) in expedited proceedings.

18. *See generally* 73B C.J.S. *Public Utilities* § 105 (2010) ("The purpose of using a test year is to establish with a reasonable degree of accuracy revenue and expenses that a public utility will experience during the period when new rates will be in effect.").

19. *See, e.g.,* KRS 278.183 (allowing surcharge to recover costs associated with compliance with Federal Clean Air Act and other environmental legislation).

20. This Court noted in dicta that approval of other fuel adjustment clauses in expedited proceedings outside general rate cases has been accepted in many other jurisdictions in *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.*, 983 S.W.2d at 498. But this Court was not faced with deciding

spite the lack of a specific statute permitting these (although a regulation permitting such fuel adjustment clauses premised on KRS 278.030 exists).[21] They contend that the PSC has implied authority to deal with specific ratemaking issues outside the context of a general rate proceeding unless specifically limited by statute. Their argument is contrary to the Court of Appeals' view that the PSC's powers are only those expressly and specifically enumerated by statute or those actions required under "disaster" situations where such measures are required to rescue utilities from the brink of bankruptcy.[22]

We decline to reach the utility's argument that other statutes dealing with specific ratemaking issues limit rather than expand their power because those specific ratemaking issues are not before us. But we simply find nothing in other statutes in

KRS Chapter 278 that would forbid the PSC from allowing a rider or surcharge for the costs at issue here before the enactment of KRS 278.509. In fact, we find nothing in the statutes that would prohibit "single-issue ratemaking"—contrary to the Attorney General's arguments.[23]

Although the Attorney General contends that the utilities were able to obtain a guaranteed return on their investment or obtained a double recovery of costs, he shows us no evidence of record that such events occurred.[24] And we note that the PSC required annual review of the surcharge and, on occasion, modified it. So the facts indicate that the PSC acted to ensure that the rates were fair, just, and reasonable by expedited annual proceedings to review the application of the rider or surcharge.[25]

the validity of a fuel adjustment clause there. More precisely, we determined whether KRS 278.183 (permitting allowance of environmental surcharges to help utilities recoup costs of complying with environmental legislation) was constitutional and could be applied retroactively to allow recoupment of costs incurred before KRS 278.183 was enacted.

**21.** *See* 807 KAR 5:056 (regulating fuel adjustment clauses and stating that the statutory authority for the regulation is KRS 278.030(1)). Naturally, a regulation must be authorized by statute to be valid. *See Commonwealth v. Chestnut*, 250 S.W.3d 655, 662 (Ky.2008) ("an administrative agency cannot by its rules and regulations, amend, alter, enlarge or limit the terms of legislative enactment.") (internal quotation marks omitted). Because the issue is not directly presented to us in this case, we express no opinion about whether 807 KAR 5:056 is valid.

**22.** To the extent that the Court of Appeals opinion holds that the PSC may only authorize the recovery of costs without specific statutory authorization only where the facts of the case present a danger such as a utility facing immediate bankruptcy or discontinuance of service, we reject such a view as being

contrary to the PSC's general powers and plenary authority.

**23.** To the extent that the PSC has established its own policy against "single-issue ratemaking," as suggested by the Attorney General's brief, it appears that the PSC would have discretion whether to retain or discard such a policy or determine whether it has been violated under the facts of a particular case given its plenary ratemaking authority circumscribed primarily by its duty to ensure that rates are "fair, just and reasonable" and the lack of clear statutory prohibition against "single issue ratemaking."

**24.** The Attorney General has not contended that use of the AMRP rider in expedited proceedings actually resulted in higher rates than those that would have resulted if AMRP riders/surcharges were subjected to an annual general rate case process, nor clearly argued that the end result (the actual rate charged to customers) was not fair, just, and reasonable.

**25.** The PSC has also alleged that it took other protective measures benefiting consumers, such as requiring certificates of need before any mains were replaced and requiring the surcharge to be disclosed as a separate line item on customers' bills. We need not exten-

In sum, we agree with the view that the PSC had the plenary authority to regulate and investigate utilities and to ensure that rates charged are fair, just, and reasonable under KRS 278.030 and KRS 278.040. This authority allowed the PSC to allow the rider and to re-calculate the dollar amount of the surcharge in expedited annual proceedings even before the effective date of KRS 278.509, which expressly clarified (but did not create) the PSC's authority to allow recovery of the cost of natural gas pipeline replacement not covered by existing rates so long as the rates are fair, just, and reasonable. So we reverse the lower court decisions to the contrary and reinstate the PSC's orders allowing for the recovery of these costs.

Contrary to the conclusion of the Court of Appeals that the statutes unambiguously denied the authority to allow the AMRP rider and, thus, no deference was owed to the administrative agency's interpretation under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,[26] we find nothing in the statutes disallowing the AMRP rider, although, we similarly find no real ambiguity in the statutes. We conclude that because the statutes generally recognize a duty to establish "fair, just, and reasonable" rates without necessarily requiring a particular procedure to deal with isolated ratemaking issues, the *Hope* doctrine that "[it is] the result reached rather than the method employed which is controlling"[27] is applicable. Applying this doctrine to the instant case, we conclude that the lower courts erred when disturbing the challenged orders of the PSC.

In summary, since there was no statutory authority forbidding it to do so, the PSC's plenary powers were sufficient to permit it to approve the AMRP rider even before the enactment of KRS 278.509. KRS 278.509 is, thus, merely a legislative codification and approval of the lawful actions the PSC had already taken as to the AMRP program. So we reverse the portion of the Court of Appeals' opinion that upheld the trial court's reversal of PSC orders predating the enactment of KRS 278.509 and affirm on other grounds the portion of the Court of Appeals' opinion reinstating the PSC orders following the enactment of KRS 278.509.[28]

## IV. CONCLUSION.

For the foregoing reasons, the opinion of the Court of Appeals is affirmed, in part, and reversed, in part; and this case is remanded to the Franklin Circuit Court with directions to reinstate the challenged orders of the PSC.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. ABRAMSON, CUNNINGHAM, NOBLE, and SCOTT,

---

sively review all protective measures actually or allegedly taken as we conclude that the PSC's plenary ratemaking authority under KRS 278.030 and KRS 278.040, the lack of statutory prohibition against recovery of these particular costs, and the lack of argument that the end result was unjust and unreasonable lead us to conclude that the lower courts lacked justification to disturb the challenged PSC orders here.

**26.** 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**27.** *National–Southwire*, 785 S.W.2d at 510, citing *Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

**28.** As we hold the PSC had the authority to approve the AMRP rider even prior to the enactment of KRS 278.509, we need not reach whether the Court of Appeals erred in reversing the trial court's ruling that KRS 278.509 violated Section 51 of the Kentucky Constitution.

JJ., concur. VENTERS, J., dissents by separate opinion. SCHRODER, J., not sitting.

VENTERS, J., Dissenting:

I respectfully dissent. The Court of Appeals correctly determined that prior to the 2005 enactment of KRS 278.509, the PSC had no statutory authority to approve the requested rate increases other than through the general rate-making process established in KRS 278.190. By granting the increased rates so that Appellants could expedite the recovery of certain long-term capital expenditures, the PSC side-stepped its own regulations (807 KAR 5:001 § 10) and the closer public scrutiny inherent in KRS 278.190. That KRS 278.509 was specifically adopted to provide legislative cover for rate changes involved here simply highlights the fact that, without such legislation, the rate changes were not authorized. The Court of Appeals properly struck down the pre–2005 rate increases.