RENDERED: JULY 15, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1394-MR

IOLA CAPITAL; DAVID BROWN;
AND KIMBERLY BROWN                                      APPELLANTS


|         | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---------|------------------------------------|
| v.      | HONORABLE THOMAS D. WINGATE, JUDGE |
|         | ACTION NO. 20-CI-00075             |


PUBLIC SERVICE COMMISSION OF
KENTUCKY; ATTORNEY GENERAL
OF KENTUCKY; AND LOUISVILLE
GAS AND ELECTRIC COMPANY                                 APPELLEES


AND


NO. 2020-CA-1395-MR

BERNHEIM ARBORETUM AND
RESEARCH FOREST                                          APPELLANT


|         | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---------|------------------------------------|
| v.      | HONORABLE THOMAS D. WINGATE, JUDGE |
|         | ACTION NO. 20-CI-00085             |

LOUISVILLE GAS AND ELECTRIC
COMPANY; ATTORNEY GENERAL
OF KENTUCKY; AND PUBLIC
SERVICE COMMISSION OF
KENTUCKY                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Bernheim Arboretum and Research Forest (Bernheim)
and Iola Capital, LLC, Kimberly Brown, and David Brown (collectively Iola)
appeal from the Franklin Circuit Court's order which upheld the dismissal of their
complaints against the Public Service Commission of Kentucky (the Commission).
The appellants had sought to challenge the Commission's prior grant of a
certificate of public convenience and necessity (CPCN) to Louisville Gas and
Electric Company (LG&E) for the construction of a section of natural gas pipeline
in Bullitt County, Kentucky, which would run through the appellants' property.

        We disagree with the circuit court that it lacked subject matter
jurisdiction of the appellants' appeal of the dismissal of their complaint before the
Commission.  Judicial review is required.

        We agree with the circuit court that there was no due process violation
as there was no obligation to provide the appellants with notice, an opportunity to

-2-

be heard, or an opportunity to intervene before the CPCN was granted. The General Assembly chose not to give interested landowners any of these rights when it comes to the application process for a CPCN for a natural gas pipeline and we cannot grant the parties such rights through the judicial review process. We note that at times there may be "some injustice" in a particular outcome, due to "a hiatus in the law," but our courts cannot provide a remedy; instead, the problem can only be remedied by legislative action. *Ernest Simpson Const. Co. v. Conn*, 625 S.W.2d 850, 851 (Ky. 1981). At best, all we can do is bring attention to their plight.

Accordingly, the properly granted CPCN could not be overturned through a complaint brought before the Commission or through a declaratory judgment and the Commission did not act arbitrarily in dismissing the appellants' complaints. While the granting of the CPCN set the stage for the condemnation process, affected landowners (through whose land a natural gas line route is proposed to traverse) have no fixed rights prior to the condemnation proceedings. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2016, LG&E filed an application for approval of an increase in its electric and gas rates with the Commission. Notice about the proposed rate increase was published and listed on the Commission's website.

Within the rate action, LG&E disclosed its plans to put in a new ten to twelve-mile section of natural gas pipeline in Bullitt County. Twelve intervenors participated in the rate action.

LG&E did not file a separate application for a CPCN for the pipeline pursuant to Kentucky Revised Statutes (KRS) 278.020(1)(a), believing it to be unnecessary as an "extension" of existing facilities under KRS 278.020(1)(a)2. While LG&E did disclose the route chosen for the pipeline to the Commission, it did so subject to the route being treated as confidential by the Commission.

Concerns were raised by the Commission as to whether a CPCN was in fact required for the pipeline due to the size of the proposed project. The Commission then decided that pursuant to the statute a CPCN was required.

In June 2017, the Commission entered an order which made findings that a CPCN should be granted for the pipeline. The Commission determined that LG&E had satisfied all the requirements for a CPCN within the rate action and that the proposed pipeline was necessary for LG&E to accommodate current and expected system requirements. The granting of the CPCN was, however, conditioned on LG&E providing statements of actual costs upon completion and LG&E obtaining approval from the Commission prior to incurring long-term financing for the project pursuant to KRS 278.300.

In May 2019, counsel for Bernheim made an Open Records request of the Commission for the route of the pipeline. After consultation with LG&E, which advised that the route no longer needed to be protected as confidential, the Commission disclosed the route. It was at this time that Bernheim first learned that the proposed route was to extend through the Cedar Grove Wildlife Corridor which is a section of conservation land which Bernheim alleges "the Commonwealth of Kentucky is required to protect from development and gas pipelines pursuant to a Conservation Easement held by the Commonwealth and under a deed restriction giving the U.S. Fish and Wildlife Services authority on the disposition of the property[.]"

After being granted the CPCN, LG&E began acquiring the easements necessary for construction, but no agreement could be reached between LG&E and either Iola or Bernheim. As a result, LG&E instituted condemnation actions in July 2019, against Iola and Bernheim in Bullitt County Circuit Court pursuant to KRS 416.570.[1] Those proceedings are ongoing and are not the subject of this appeal.

---

[1] LG&E has broad authority to condemn as granted by both KRS 416.140 (producing or supplying gas) and KRS 278.502 (condemnation for gas pipelines). *See Commonwealth, Dep't of Highways v. Vandertoll*, 388 S.W.2d 358, 360 (Ky. 1964), *as modified on denial of reh'g* (Mar. 26, 1965) (noting that courts will not interfere with such power to condemn unless "there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power").

In July and August 2019, Iola and Bernheim each respectively filed formal complaints with the Commission seeking to void the CPCN in which they named LG&E as the defendant. These complaints alleged that the issuance of the CPCN without there being a CPCN application violated Kentucky law, the Commission's own regulations, and constituted a denial of due process. The parties also claimed that they were entitled to receive notice of the CPCN application, and had the right to intervene in that action, but were unreasonably denied notice because LG&E never applied for a CPCN.

The Commission entered its order on December 20, 2019, dismissing Iola's and Bernheim's complaints and rejecting their requests to void the CPCN. The Commission determined that Iola and Bernheim failed to establish that general notice is required upon the filing of a CPCN for a natural gas pipeline or that they were specifically entitled to receive notice. In doing so, the Commission determined that neither KRS 278.020(1)(b) nor 807 Kentucky Administrative Regulations (KAR) 5:001 Section 15 requires public notice or any notice whatsoever. Accordingly, the Commission concluded that Iola and Bernheim lacked standing to challenge the Commission's final order for lack of notice. Additionally, the Commission concluded that their general allegations that the pipeline should have been rejected as too expensive and dangerous were

-6-

insufficient to raise any questions of error. Finally, the Commission determined its decision to grant a CPCN to LG&E had been, and remained, appropriate.

Bernheim and Iola filed separate administrative appeals before the Franklin Circuit Court pursuant to KRS 278.410, naming both the Commission and LG&E as defendants. These appeals not only sought judicial review of the Commission's rulings, but also sought declaratory judgment pursuant to KRS 418.040, and asserted claims of violations of Section 2 of the Kentucky Constitution and violations of the parties' due process rights.

LG&E and the Commission moved to dismiss the actions arguing that the circuit court did not have jurisdiction insofar as only "parties" to the Commission proceedings had a right to judicial review pursuant to KRS 278.410(1). On September 30, 2020, the circuit court granted the motion to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02, on the basis that the court lacked subject matter jurisdiction. The circuit court explained that Bernheim and Iola were never parties to a Commission proceeding because their formal complaints were dismissed and it believed that, therefore, the court did not have jurisdiction to review the Commission's decision under KRS 278.410.

The circuit court further found that Iola and Bernheim could not be deprived of due process as the Commission had the power to dismiss their complaint without a hearing and appropriately did so since no public notice was

required for construction of a natural gas pipeline. As to Bernheim, the circuit court found that dismissal of its complaint was appropriate because at the time of the CPCN proceedings, Bernheim did not own the land in question. Additionally, the circuit court opined that if Bernheim had been a landowner at the time, it could not have suffered a due process violation from lack of notice as "[Bernheim] would not be an 'interested party' within the meaning of KRS 278.020(1)(b) because it 'had no status or standing different from any of the other thousands of patrons' of LG&E. *Satterwhite v. Public Service Comm'n*, 474 S.W.2d 387, 389 (Ky. 1971)." Similarly, as to Iola, the circuit court concluded that there was no requirement for public notice or a public hearing and, also noted, "it appears that Elizabeth Brown did receive notice of the proceedings and chose not to intervene."

## APPEAL

Bernheim and Iola each appealed, and those appeals have been consolidated by this Court. Bernheim alleges that: (1) the circuit court erred in finding that it did not have subject matter jurisdiction over Bernheim's claims; (2) KRS 278.410 grants the Franklin Circuit Court jurisdiction to hear the appeal of an order of the Commission, including dismissal of Bernheim's complaint; (3) the circuit court also had jurisdiction to hear the declaratory judgment action; and (4) the circuit court erred in determining that Bernheim had suffered no violation of due process. Iola's appeal raises these same issues but adds the allegations that:

-8-

(5) the CPCN at issue is invalid as a matter of law; (6) Iola had a "special interest" in the subject property granting it "party" status to the Commission's proceedings; and (7) the "improper and illegal concealment" of the CPCN proceedings violated Iola's property rights and the statutory and regulatory process.

## I. SUBJECT MATTER JURISDICTION

As an initial matter, we address whether the Franklin Circuit Court correctly determined that it lacked subject matter jurisdiction to consider the appellants' claims. The appellants filed their complaints with the Commission pursuant to 807 KAR 5:001 Section 20. In doing so, each appellant would be categorized as a "party" pursuant to 807 KAR 5:001 Section 1(10)(a), which states: "'Party' means a person who: (a) Initiates action through the filing of a formal complaint, application, or petition[.]"

As nominal parties before the Commission, the appellants assert that the Franklin Circuit Court had jurisdiction to review the actions of the Commission, even though their complaints were dismissed without a hearing. KRS 278.410(1) grants such authority to the circuit court as it states that "[a]ny *party* to a commission proceeding . . . affected by an order of the commission may . . . bring an action against the commission in the Franklin Circuit Court to vacate or set aside the order or determination on the ground that it is unlawful or unreasonable." (Emphasis added.)

We conclude that the Franklin Circuit Court was incorrect in ruling that it lacked subject matter jurisdiction to review the dismissal. A party who instigates a proceeding before the Commission has a right to appeal a dismissal.

## II.    DUE PROCESS

We next discuss the appellants' arguments that they were denied due process because they did not receive notice and an opportunity to be heard on the extension of the pipeline. The process that was due the appellants is only that set out in the statutes and regulations governing proceedings before the Commission. *See generally Kentucky Cent. Life Ins. Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995); *Bee's Old Reliable Shows, Inc. v. Kentucky Power Co.*, 334 S.W.2d 765, 766 (Ky. 1960). However, before we discuss the process the appellants were due, it is helpful to define the purpose of a CPCN and the parameters of what is required for the granting of a CPCN.

### A. CPCN PURPOSE

Pursuant to KRS 278.020(1), unless an enumerated exception applies, a CPCN must be obtained from the Commission before a pipeline may be constructed. The Commission decides the matter by issuing such a certificate when it concludes that "public convenience and necessity *require the service or construction*." *Id.* (emphasis added). As clarified in KRS 278.020(5), the granting

-10-

of a CPCN shows "that there is a *demand and need for the service sought to be rendered*." (Emphasis added.)

807 KAR 5:001 Section 15(2) specifies what a utility must submit with its application for a CPCN, which includes:

> (a) The facts relied upon to show that the proposed construction or extension is or will be required by public convenience or necessity;
>
> . . .
>
> (c) A full description of the proposed location, route . . . ;
>
> (d) . . .
>
>> 1. Maps . . . showing the location or route of the proposed construction or extension[.]

Matters submitted to the Commission may be requested to be kept confidential pursuant to 807 KAR 5:001 Section 13, if they qualify for confidentiality under KRS 61.878. To avoid land speculation, the route where easements will be sought is often made confidential as it was here.

The requirements for the issuance of a CPCN have also been clarified in *Kentucky Utilities Company v. Public Service Commission*, 252 S.W.2d 885, 890 (Ky. 1952), which states that a utility must "first [make] a showing of a substantial inadequacy of existing service, involving a consumer market sufficiently large to make it economically feasible for the new system or facility to be constructed and operated" and

-11-

[s]econd, [show that] the inadequacy . . . [is] due either to a substantial deficiency of service facilities, beyond what could be supplied by normal improvements in the ordinary course of business; or to indifference, poor management or disregard of the rights of consumers, persisting over such a period of time as to establish an inability or unwillingness to render adequate service.

These factors

embod[y] the element of absence of wasteful duplication, as well as a need for service. Therefore, a determination of public convenience and necessity requires both a finding of the need for a new service system or facility from the standpoint of service requirements, and an absence of wasteful duplication resulting from the construction of the new system or facility.

*Id.* (citations omitted).

As should be evident from the language used in the statute, regulations, and caselaw, CPCNs are concerned with the need for services for consumers in general, rather than how the expansion of services will affect the property owners whose land is traversed by the utility. Whether the expansion of a pipeline is warranted is important because natural gas companies can charge their customers more based upon the cost to construct new pipelines, so the Commission seeks to limit unneeded expansion. *See generally Kentucky Public Service Comm'n v. Commonwealth ex rel. Conway*, 324 S.W.3d 373, 383 (Ky. 2010) (discussing the Commission's power to establish utility rates) and KRS 278.030(1) (noting that "[e]very utility may demand, collect and receive fair, just and

-12-

reasonable rates for the services rendered or to be rendered by it to any person").

The purposes of a CPCN impact the rest of our discussion.

## B. CPCN PROCESS

While a lower court's granting of a motion to dismiss is reviewed *de novo*, we will review the Commission's granting of the CPCN and the dismissal of the appellants' complaints without a hearing for abuse of discretion. *Inter-County Rural Elec. Coop. Corp. v. Public Service Commission*, 407 S.W.2d 127, 130 (Ky. 1966).

## 1. STAND-ALONE CPCN NOT REQUIRED

We must resolve whether or not the Commission could properly grant a CPCN to LG&E without the filing of a separate, stand-alone, CPCN application. It is undisputed by the parties at this juncture that a CPCN was required for the extension of the pipeline.

The statutes make it clear that the legislature has vested broad discretion in the Commission regarding assessing the overall necessity, safety, and cost issues of proposed natural gas pipelines. The Commission determined that LG&E required a CPCN for this project. LG&E complied with all the requirements of a stand-alone application for a CPCN. The Commission then applied the proper regulatory standards for granting a CPCN.

Given this process, we cannot say that there was any prejudice to the appellants of a CPCN being "obtained" by LG&E as part of an amendment of its application for a rate increase to include the CPCN application. Accordingly, under these specific facts, it was not unlawful or arbitrary for the Commission to issue a CPCN pursuant to KRS 278.020(1)(a), without requiring LG&E to first file a separate CPCN application.

## 2. NOTICE NOT REQUIRED

The appellants' arguments, however, do not focus on either the Commission's legal authority to grant the CPCN or the factual determinations made in granting the CPCN. The appellants assert that "notice" should have been given to them, or the public in general, either when LG&E notified the Commission of the planned pipeline or when the Commission determined to later treat that notification as an (unfiled) application for a CPCN. The appellants argue that this lack of notice, which they assert they were lawfully due, denied them the opportunity to comment or request a hearing before the Commission's issuance of the CPCN to LG&E.

Iola and Bernheim had different property interests at the time the CPCN was being considered by the Commission. While Iola owned the property that LG&E would later seek to condemn for the pipeline route, Bernheim did not own the property that would be affected by the pipeline at the time of the CPCN.

-14-

Bernheim asserts that it still had a property interest in the CPCN process because it began the process of acquiring the relevant land in 2013. We disagree that Bernheim had a similar interest to Iola at the time of the CPCN as the property Bernheim was negotiating to acquire was not transferred to it until October 15, 2018. We agree with the circuit court that Bernheim did not possess a property interest at the time of the CPCN process and was therefore not entitled to any notice that property owners might possess.

The circuit court also found that a member of the Brown family did receive notice of the proceedings but did not attempt to intervene and, therefore, the court determined that Iola waived any claim to intervention. We cannot find support for this finding in the record. Therefore, we disagree that there was any waiver by Iola in not attempting to intervene during the rate case.[2]

Furthermore, LG&E and the Commission argued, and the circuit court agreed, that no notice, whatsoever, was due to either of the appellants.

---

[2] The record itself provided no evidence to support a member of the Brown family received sufficient notice to participate in what ended up being the combined rate and CPCN action. Given the absence of evidentiary support for this ruling, this issue was raised with the parties during oral argument. Based on their responses, it appears that at best a member of the Brown family knew that LG&E was surveying land Iola owned and may have also been aware that a number of surveys were taking place. While LG&E argues that the public generally knew that a gas line would be going through the land, and thus should have understood that certain properties would be affected based on their surveys, Iola argued that in 2017 LG&E surveyed eleven different pipeline locations and no one at that time could have known that the final route would cross their land. Additionally, it appears to us to be problematic to expect landowners to participate in the rate case on the off chance that it will then involve an unfiled CPCN of an undisclosed extension of a pipeline route which could possibly affect them.

-15-

Accordingly, for purposes of this appeal, we will discuss generally what notice is due.

The central issue on appeal is whether the appellants would have received notice, had an opportunity to be heard, and/or been granted standing to intervene if the Commission had caused LG&E to file a separate CPCN for the pipeline. KRS 278.020(1)(b) states that:

> Upon the filing of an application for a certificate, and after any public hearing which the commission may in its discretion conduct for all interested parties, the commission may issue or refuse to issue the certificate, or issue it in part and refuse it in part[.]

The appellants rely upon the phrase "for all interested parties" found in KRS 278.020(1)(b) for the proposition that some form of public notice is required to be given to parties who might be interested or affected by the CPCN application. However, the appellants' argument is misplaced as this statute applies in a variety of contexts to CPCNs for various utilities. We find notice requirements for: overhead electrical lines in KRS 278.020(9) and 807 KAR 5:120; nonregulated electric transmission lines and carbon dioxide transmission pipelines in KRS 278.714(2)(e); and cellular antenna towers in KRS 278.650.

In contrast, there are no notice requirements for CPCNs governing natural gas pipelines in the relevant statutes and regulations. Neither KRS 278.020, nor 807 KAR 5:001 Section 15, reveals any general or specific notice

-16-

requirements to interested parties. Therefore, the use of the term "interested parties" in KRS 278.020(1)(b) must be interpreted as only having application to CPCN proceedings where defined categories of interested parties are to be given notice, and an opportunity to participate, via other statutory and regulatory provisions.

During oral argument, the appellants argued that, had a separate CPCN been filed, there would have been notice on the Commission's website and, had the route been disclosed, they would have intervened at that point. The appellants implied the route was made confidential for strategic and nefarious purposes, rather than simply to prevent land speculation regarding property acquisitions.

Although the appellants argued that a separate application for a CPCN would have resulted in notice to them, the appellants provided no statute or regulation that required the disclosure of the filing of an application for a CPCN on the Commission's website or would have required that the route be publicly disclosed if it were posted on the website. Without such posting being a requirement, we cannot determine that such notice was required.

### 3.  RIGHT TO BE HEARD NOT REQUIRED

The appellants argue they have a right to be heard on the CPCN application because of the language contained in KRS 278.020(1)(b). They also

point out that a hearing was provided in the rate action. However, the mere mention of the possibility of a public hearing does not mandate that one be held.

The appellants ignore the clause in KRS 278.020(1)(b) that uses the word "may," which emphasizes the Commission's discretion in determining whether to hold a public hearing. There is simply no requirement mandating that a hearing had to be held on the CPCN portion of the action.

## 4. RIGHT TO INTERVENE NOT REQUIRED

As to the appellants' arguments that they should have been allowed to intervene, we note that even if timely requested, intervention is not required. Intervention is governed by 807 KAR 5:001 Section 4(11) which states in relevant part:

> Intervention and parties.
>
> (a) A person who wishes to become a party to a case before the commission may, by timely motion, request leave to intervene.
>
>     . . . .
>
> (b) The commission shall grant a person leave to intervene if the commission finds that he or she has made a timely motion for intervention and that he or she has a special interest in the case that is not otherwise adequately represented or that his or her intervention is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings.

-18-

The Commission is granted the discretion to decide whether a person "has a special interest in the case that is not otherwise adequately represented" or whether such person's "intervention is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings." 807 KAR 5:001 Section 4(11)(b). Those decisions will not be disturbed by our courts unless they are clearly arbitrary. Therefore, only an original party to a Commission proceeding has anything more than a "right to request intervention" in such proceedings. 807 KAR 5:063 Section 1(1)(l)3.; 807 KAR 5:063 Section 1(1)(n)3.; 807 KAR 5:120 Section 2(5)(c). Our statutes grant no matter-of-right intervention. *See EnviroPower, LLC v. Pub. Serv. Comm'n of Kentucky*, No. 2005-CA-001792-MR, 2007 WL 289328, at *3 (Ky. App. Feb. 2, 2007) (unpublished) (explaining "[u]nder this regulation, the [Commission] retains the power in its discretion to grant or deny a motion for intervention").[3]

The Commission had the discretion to disallow any requests by the appellants to intervene in CPCN matters.

---

[3] We cite to this unpublished decision pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c) which allows consideration of an unpublished decision where there are no published opinions that adequately address the issue. We note that this unpublished opinion is routinely cited for this proposition.

## 5.  LACK OF PROCESS TROUBLING BUT NOT CORRECTABLE ON APPEAL

We do not know why the General Assembly chose to designate certain individuals as interested parties with the right to notice and the opportunity to be heard and declined to give other potential interested parties these same rights. We see no logical distinction for why notice is required for affected landowners for other utility projects like overhead electric lines, carbon dioxide pipelines, nonregulated electric transmission lines, and cellular phone towers, while no notice is required for landowners who are to have natural gas pipelines running through their properties with all the inherent danger that natural gas pipelines entail. *See* 2A AMERICAN LAW OF TORTS § 9:76 *Gas; gas companies* ("[a]s has been frequently pointed out by the various American courts, it is well settled that gas is an inherently dangerous instrumentality because of its highly flammable and explosive character").

While we believe it would be reasonable if affected property owners were deemed interested parties and recognize that they potentially possess pertinent knowledge about the topography of their land and the challenges and potentially elevated costs that placing a pipeline through it could present (in this case the appellants noted that placing a pipeline on the route selected through their land would be costly due to the presence of caves, sinkholes, and its proximity to a home's front porch and would require clear cutting of trees in a conservation area

as the path would be placed adjacent to an existing powerline easement), the General Assembly apparently does not agree. We can certainly sympathize with the appellants' frustration that they were not given notice which would have given them an opportunity to request intervention so they could participate in the CPCN proceedings and explain why the placement of a pipeline through their property (or the property Bernheim was attempting to acquire) would be problematic before LG&E was firmly committed to that route for the pipeline. Bernheim, in particular, would have been able to advise the Commission and LG&E of the plans for the purchase and dedication of parklands along the route as well as geologic and natural elements that may not have been recognized or appreciated by the Commission or LG&E.

We are mindful of the fact that Bernheim has noted that the introduction of a pipeline into the Cedar Grove Wildlife Corridor potentially runs afoul of the requirements of a conservation easement held by the Commonwealth[4]

---

[4] This issue is not properly before us, but we note that KRS 382.850(2) states that "[a] conservation easement shall not operate to . . . impair or restrict any right or power of eminent domain created by statute, and all such rights and powers shall be exercisable as if the conservation easement did not exist." The issue of how that statute should be interpreted has been considered in the companion case of *Commonwealth v. Louisville Gas and Electric Company*, ___ S.W.3d ___, No. 2020-CA-0882-MR, 2022 WL 1194180 (Ky. App. Apr. 22, 2022) (designated to be published), in which LG&E, the Isaac W. Bernheim Foundation, and the Kentucky Heritage Land Conservation Fund Board (which owns the conservation easement through Bernheim Forest) are parties. At this time, that Opinion is non-final as a motion for discretionary review is pending before the Kentucky Supreme Court.

-21-

which is subject to the U.S. Fish and Wildlife Services' authority, that the cost to the Commission and LG&E in the subsequent litigation that has followed must be substantial, and that the cost of the pipeline has increased dramatically in the interim, but these details do not make the lack of notice run afoul of the statutory scheme. It seems to us that by the time the condemnation process is underway, and LG&E is firmly committed to a particular route, it is a little too late to be debating whether it is appropriate to add the extension and whether the chosen route is the most appropriate one. Although hindsight and the copious amount of litigation that has ensued should make it obvious that effective notice and an opportunity to participate earlier in the approval process might have spared the Commission and LG&E much delay and additional cost, we cannot require action based on these practical considerations, but urge that the Commission consider giving such notice in the future in its own discretion.[5] Alternatively, we urge the legislature to act and mandate notice to landowners.

---

[5] This Court's ruling should not be interpreted to imply that the Commission should not, or cannot, openly and timely advise the public of proposed construction projects and the impact of such projects on those in its proximity. The Commission has the discretion to provide notice, allow public input, and hold hearings. Best practices would dictate that the Commission: (1) cause utilities such as LG&E to file separate applications for each CPCN they may require so that the factual and procedural history for every such proposal is clear; (2) cause "notification" to be positively served upon all "interested parties" in the broadest sense of the term; (3) inform the public of proposals before the Commission; and (4) hold public hearings if the response it receives indicates it is appropriate to do so. There is no substitute for public notice and participation. If the Commission were to take such action, both utilities and the Commission could be fully transparent to the public, our legislature, and our courts. However, there is no legal requirement that the Commission follow what we consider to be the best practices.

We cannot graft mandatory notice and opportunity to be heard requirements onto the CPCN process for a natural gas pipeline. Reading in these rights would require courts to decide not only who interested parties are, but how notice should be provided to them, and when hearings should be held. As none of these procedures are addressed or defined by statute or regulation, we cannot legislate them into existence from the bench.

### III. THE GRANTING OF A VALID CPCN CANNOT BE ALTERED AFTERWARDS

While we understand the appellants' frustration that they did not receive notice and an opportunity to participate in the CPCN process, because the Commission properly acted within its statutory authority in granting the CPCN there is no "work-around" to allow a challenge at this point, or basis for requiring a "do over" of the CPCN process.

#### A. FILING A COMPLAINT WITH THE COMMISSION IS NOT A "WORK-AROUND"

The Commission granted the CPCN to LG&E some two years before the appellants filed their complaints before the Commission regarding their failure to be notified of the CPCN process. This delay stemmed from the appellants' lack of notice that the route of the pipeline would traverse their properties prior to the Open Records request and institution of the condemnation process. However, we agree with the Commission that filing a complaint is not an alternative means to

overturn a properly granted CPCN regarding a natural gas pipeline.[6]  After the time

for appealing a CPCN action has elapsed, the parties should be assured of finality.

Given the limited nature of what must be determined for the granting of a CPCN

and that intervention was not required to be granted, it is not appropriate to

overturn this process through a complaint filed by nonparties to the original CPCN

process.

The record shows that during the complaint process, the Commission

determined the appellants did not satisfy either category necessary for granting

intervention when it made written findings that the appellants' assertions of cost

concerns "fail[ed] to provide any information to demonstrate that the increase in

cost renders the Commission-approved pipeline to no longer be the most

reasonable, least-cost alternative or that the increase in cost was due to imprudent

practices by LG&E" and that the appellants' safety concerns were "general in

nature and have not been articulated with specificity[.]"  While the appellants may

disagree with this assessment, this determination was reasonable and appropriate

---

[6] During oral argument, the Commission explained that the typical complaint concerned customers challenging their bills (either from a meter reading incorrectly or from being placed in an incorrect rate category).  While the statutory language does not limit what kinds of complaints may be brought, and we will not impose any such limitation, filing a complaint before the Commission is certainly not the functional equivalent of the Kentucky Rules of Civil Procedure (CR) 60.02 process allowing relief from a "final judgment, order, or proceeding" under certain enumerated grounds.  Additionally, CR 60.02 only allows potential relief for "a party or his legal representative[.]"

given the Commission's discretion, especially given the status of the project at the time they sought intervention.

## B. DECLARATORY JUDGMENT

The appellants also argue that the circuit court had jurisdiction to entertain a declaratory judgment action made pursuant KRS Chapter 418, and that this is an appropriate means to grant them relief. We disagree.

The circuit court, in rejecting that it had such jurisdiction, relied on *Pritchett v. Marshall*, 375 S.W.2d 253, 257 (Ky. 1963), which states:

> A declaratory judgment proceeding will not be entertained for the determination of the procedural rules, or the declaration of the substantive rights involved in a pending suit. Such decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent to decide them. This principle has been applied, and the action dismissed on jurisdictional grounds, where the question was within the jurisdiction of an administrative agency.

(Internal quotation marks and citations omitted.)

We do not necessarily agree that the "pending suit" in Bullitt County regarding condemnation precludes a declaration of rights regarding the narrow scope of the Commission's actions. However, in scrutinizing the statutes at issue and the Commission's derivative regulations, we are confident that the Commission acted properly within its authority in dismissing the appellants' complaints.

We also do not believe that it is appropriate to allow appellants to circumvent the original proceedings by trying to obtain a declaration that would function to void the previous action properly taken by the Commission. Although the scope of the Kentucky Declaratory Judgment Act is indeed broad, our courts "may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances." KRS 418.065. The declaratory judgment process cannot be used in place of the existing system of remedies and actions. Additionally, as we have already determined, there is no merit to the appellants' argument that they should have been granted notice, an opportunity to be heard, or intervention. Therefore, they are not entitled to a new CPCN process.

We are further persuaded by the fact that the orders of our administrative agencies require, at some point, finality. Without pronouncing an arbitrary limitations period, we can state that the length of time between the granting of the CPCN and the filing of the declaratory judgment action sways our decision to affirm the Franklin Circuit Court's refusal to entertain the action.

## C. CONSTITUTIONAL CLAIM OF ARBITRARINESS

The appellants also assert they require a "do-over" of the CPCN process due to violations of Section 2 of the Kentucky Constitution which states that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." We are mindful that courts may provide judicial review of arbitrary actions taken by the Commission. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964); *Pritchett*, 375 S.W.2d at 258. In this instance however, and within these specific facts, we cannot say that the Commission's actions rise to the level of arbitrariness regarding these specific appellants such as to entitle them to relief. The Commission made determinations which lie within its lawfully delegated discretionary authority.

The issues to be determined by the Commission, as assigned to it by our legislature, were not the proper or best route for the pipeline or a determination of which landowners would or would not be subject to its construction. Instead, the questions before the Commission were: (1) the adequacy of existing services; (2) public safety; (3) economic feasibility; and (4) avoidance of wasteful duplication. The Commission resolved these questions within its discretionary authority and provided a basis for the same. Therefore, the circuit court's refusal

to hear this claim did not harm the appellants where arbitrariness could not be established.

## CONCLUSION

We note that denying the appellants' claims for redress in this appeal does not mean that the pipeline will necessarily be constructed through their properties. Instead, the appellants' interests are specifically addressed and preserved by the Eminent Domain Act of Kentucky (KRS 416.540 to 416.670) in the ongoing condemnation proceedings before the Bullitt Circuit Court. As stated in *Kelly v. Thompson*, 983 S.W.2d 457, 458 (Ky. 1998), *as modified on denial of reh'g* (Jan. 21, 1999):

> It is within the authority of the General Assembly to define the limits of the right of eminent domain and to establish the specific terms under which the condemning authority may exercise such power. As such, it would necessarily include defining the property interest taken and retained in an eminent domain action.

We emphasize that our Opinion herein should not disturb or be given precedential effect in the ongoing condemnation proceedings. Similarly, this Opinion makes no decisions regarding the conservation easement, and does not address allegations of impropriety such as the assertion that the CPCN was granted for the sole benefit of the local Jim Beam distillery; these issues are not properly before us.

The appellants' claims of impropriety on the part of LG&E and the Commission, including those of coordinated intentional concealment, have not been precluded by our decision and are properly left for consideration within the condemnation proceedings. The circuit court there, as the finder of fact, may properly gather additional evidence, hear testimony, and conduct hearings on issues before it regarding: (1) fraud, collusion, or abuse of discretion (*see Pike County Board of Education v. Ford*, 279 S.W.2d 245, 248 (Ky. 1955)); (2) public use; and (3) necessity.

Section 2 of the Kentucky Constitution also remains available to the appellants and our judiciary to curb LG&E's power to take. As stated in *Kentucky Milk Marketing and Antimonopoly Commission v. Kroger Company*, 691 S.W.2d 893, 899 (Ky. 1985):

> Section 2 is broad enough to embrace the traditional concepts of both due process of law and equal protection of the law. Unequal enforcement of the law, if it rises to the level of conscious violation of the principle of uniformity, is prohibited by this Section.

(Citations omitted.)

Within such a review, our judiciary may also look at the motives and reasons for the condemnation in reviewing the condemning body's determination of necessity. Such an understanding is not limited to Kentucky jurisprudence as the United State Supreme Court follows identical themes. As stated in *Nashville,*

-29-

*C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415, 55 S.Ct. 486, 488, 79 L.Ed. 949 (1935), "[t]he police power [of a state] is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably."  In *Chesapeake & O. Ry. Co. v. Greenup County, Ky.*, 175 F.2d 169, 175 (6th Cir. 1949), the Sixth Circuit, in applying this unreasonable or arbitrary standard, held that the landowners could not be "shut off from showing" that, as a matter of fact, there was no necessity for the taking.

Based on the foregoing, we affirm the Franklin Circuit Court's order dismissing Iola's and Bernheim's claims for redress of the Commission's action in approving the CPCN and not allowing them relief through the complaint process. As we have previously discussed, we do not understand why notice and an opportunity to be heard was granted to interested parties by the General Assembly when it comes to some invasive utility projects and not others.  However, our decision must rest in our interpretation of what the enacted law requires and not in any notion of what it should ideally do.  *See* KY. CONST. §§ 27 and 28.

ALL CONCUR.

BRIEFS FOR APPELLANT
BERNHEIM ARBORETUM AND
RESEARCH FOREST:

Randal A. Strobo
Clay A. Barkley
Julia D. Taylor
Louisville, Kentucky


BRIEFS FOR APPELLANTS
IOLA CAPITAL, LLC,
KIMBERLY BROWN, AND
DAVID BROWN:

John D. Cox
Petersen S. Thomas
Louisville, Kentucky


ORAL ARGUMENT FOR
APPELLANT BERNHEIM
ARBORETUM AND RESEARCH:

Randal A. Strobo
Louisville, Kentucky


ORAL ARGUMENT FOR
APPELLANTS IOLA
CAPITAL, LLC, KIMBERLY
BROWN, AND DAVID
BROWN:

John D. Cox
Louisville, Kentucky

BRIEF FOR APPELLEE
PUBLIC SERVICE COMMISSION
OF KENTUCKY:

John E.B. Pinney
Nancy J. Vinsel
Frankfort, Kentucky


BRIEF FOR APPELLEE
LOUISVILLE GAS AND
ELECTRIC COMPANY:

Steven B. Loy
Monica H. Braun
Mary Ellen Wimberly
Lexington, Kentucky


ORAL ARGUMENT FOR
APPELLEE PUBLIC SERVICE
COMMISSION OF KENTUCKY:

Benjamin Austin Bellamy
Frankfort, Kentucky


ORAL ARGUMENT FOR
APPELLEE LOUISVILLE GAS
AND ELECTRIC COMPANY:

Steven B. Loy
Lexington, Kentucky